[Crim. No. 2942. Third Dist. May 28, 1959.]

THE PEOPLE, Respondent, v. RONALD WAYNE LUSHENKO et al., Appellants.

George I. Lewis, under appointment by the District Court of Appeal, for Appellants.

Stanley Mosk, Attorney General, Doris H. Maier and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Ronald Wayne Lushenko and Robert Laverne Gillette were charged with having assaulted Vincent Santelli with a deadly weapon with intent to commit murder. A jury found them guilty of the lesser offense of assault with a deadly weapon, and they have appealed from the judgment pronounced against them.

Appellants make the following contentions as grounds for reversal of the judgment: (1) Insufficiency of the evidence to support the judgment; (2) Appellant Gillette was entitled to a separate trial; (3) The court erred in not appointing counsel other than the public defender as counsel for Gillette; (4) Misconduct on the part of the district attorney.

Disregarding all conflicts in the evidence and assuming in support of the judgment the existence of every fact which the jury could reasonably deduce from the evidence, we shall briefly summarize the evidence as shown by the record.

On the evening of July 4, 1958, a large man appeared at

the door of the residence of Vincent Santelli. After receiving a glass of water from Mr. Santelli, the visitor entered Santelli's cabin and commenced to hit Santelli with a weapon which the victim described as a tool. Santelli fought with the man. He tried to catch the tool but was unable to and was severely beaten by his assailant. While the struggle was going on, another man entered and advised Santelli not to resist because he might be forced to use a gun. Santelli was unable to identify his assailant or the second man.

About 11 p.m. a neighbor heard noises coming from Santelli's cabin. He went over toward the cabin and heard moaning and crying. He then went to another neighbor's home, a Charles Muskavitch, and told him about the sounds he heard. The two then returned to the vicinity of the cabin where they heard a man moaning and crying. Muskavitch then returned to his home where he telephoned the sheriff's office. Edwards, the other neighbor, remained at the front gate, as did Muskavitch after the telephone call was completed, until the sheriff's officers arrived. During this period, which was between 20 minutes and one-half hour, they did not see anyone leave the cabin.

Deputy Sheriff Wightman, upon his arrival, heard moaning sounds coming from the cabin. As he opened the door he met Lushenko. Lushenko had what appeared to be blood on his clothes. He was perspiring and generally disheveled. There was no blood on his hands or face. In response to a question, Lushenko said to help the old man; that there was a fight; and that some men were beating the man. Lushenko was then taken outside, and Wightman saw a second man in the cabin who was also taken outside. Wightman entered the cabin and saw Santelli lying on the floor moaning and crying. His hands were tied behind his back. His face was bloody and messed up. Wightman found a piece of rubber hose with a metal rod inserted in it near Santelli. He also found a pistol in a box some three feet from Santelli. A pair of wet cotton gloves covered with what appeared to be blood were also found. Silk stockings were also found on the floor of the cabin.

During the course of the trial, Santelli could not make a positive identification of Lushenko. The gun which was found near Santelli's body was identified as the property of either Lushenko or Gillette.

Appellants Gillette and Lushenko testified that on the night of July 4, 1958, they and Eddie Sessa were on their way to Reno, Nevada, when they stopped near the Santelli residence.

They were looking for Sessa's girl friend, Eleanor, who resided somewhere in the area. Upon reaching the Santelli residence, they observed a pickup truck parked in front of the premises. Sessa got out of their vehicle and proceeded to the pickup to inquire of the occupant if he knew where Eleanor resided. Sessa returned to their car and informed Lushenko that he heard noises coming from the Santelli cabin. Lushenko got out of the vehicle and proceeded to the cabin with Sessa following him. Lushenko pushed his way into the cabin where he encountered two men. He engaged one in a fight and was knocked to the floor, which was covered with Santelli's blood. The two men ran out of the cabin and got into the pickup and drove off. Lushenko returned to their vehicle and informed Gillette of the situation in the cabin. Gillette grabbed his gun and followed Lushenko back to the cabin. Lushenko requested Gillette to go for an ambulance, whereupon Gillette handed his gun to Eddie Sessa and Gillette left the premises in his vehicle and proceeded with the intent of obtaining an ambulance. Lushenko and Sessa reentered the cabin, where Lushenko untied the ropes which bound Santelli's legs and removed the adhesive tape from his mouth. Before Lushenko could untie Santelli's hands, the police arrived and placed him under arrest. Lushenko was searched and he claimed his wallet, which contained $225, was removed from his person and he has not seen it since.

Gillette testified further that in his attempt to procure help he became lost and after driving in a circle finally straightened himself out and as he was proceeding toward Auburn the sheriff's car passed him; be observed Lushenko in the vehicle. Gillette, not wanting to get involved in any trouble, returned to Sacramento.

Carol Schaeffer testified that appellant Gillette met her in the Tropical Cellar at 7th and J Streets, Sacramento. Carol asked Gillette if he knew what had happened to Eddie Sessa and Gillette stated that he thought Eddie had been arrested. Gillette further stated that he had taken Lushenko and Eddie Sessa to the Auburn area where they were going to get some money from a hermit whom they had been watching; that they were going to do whatever they had to do to get his money. He stated that Lushenko and Sessa had gone to the cabin and assaulted the hermit and that he had waited in the car for them and when they failed to return to their meeting place he thought he might have been mistaken as to their place of rendezvous so he left; and when he did, he observed a

police car coming and took it for granted that Lushenko and Sessa had been arrested.

A few days thereafter, Gillette had another conversation with Carol Schaeffer and a girl named Jean Hagg. During this conversation, Gillette stated that he had made a weapon out of a length of hose, wherein he had inserted lead or metal in the center.

On another occasion Jean Hagg observed Eddie Sessa's wallet in the glove compartment of Gillette's automobile. Jean asked Gillette why he had Eddie's wallet in his possession, whereupon Gillette stated that Lushenko and Sessa had taken their wallets out and left them in the car in case they were caught by the police they would have no identification on them.

In another conversation Gillette stated that they had taken the cotton gloves and nylon stockings to put over their faces. The reason they took work gloves was because if they had to be discarded they could not be identified with any certain person.

There is no merit in appellants' contention that the evidence is insufficient to sustain the judgment of conviction as to both appellants. The gist of the offense of an assault with a deadly weapon is an assault with a weapon likely to produce death or great bodily harm. The jury could determine under proper instructions that the sap was a deadly weapon. The well-settled rule as to the function of an appellate court in considering the sufficiency of the evidence is as stated in *People* v. *Ogg,* 159 Cal.App.2d 38, at page 48 [323 P.2d 117]:

''Before the verdict of a jury which has been approved by the trial court can be set aside on the ground of the insufficiency of the evidence it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. We must assume in support of the judgment the existence of every fact which the jury could reasonably deduce from the evidence. If the circumstances reasonably justify the verdict, the opinion of the reviewing court that those circumstances might also be reconciled with the innocence of the defendant will not warrant a reversal. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Frankfort,* 114 Cal.App.2d 680, 689 [251 P.2d 401].)''

See also *People* v. *Osslo,* 50 Cal.2d 75, 84, 85 [323 P.2d 397].

 Insofar as the defendant Gillette is concerned, the fact that he had gone with the other defendants to Santelli's

cabin only for the purpose of robbing him, even if he had not participated in the assault, would not prevent his being found guilty of the crime of assault with a deadly weapon. While he may not have participated in the particular acts constituting the crime, he would still be subject to criminal prosecution for it. "All those who assemble themselves together with an intent to commit a wrongful act, the execution whereof makes probable in the nature of things a crime not specifically designated, but incidental to that which was the object of the confederacy, are responsible for such incidental crime. . . . Hence it is not necessary that the crime should be part of the original design; it is enough if it be one of the incidental probable consequences of the execution of that design, and should appear at the moment to one of the participants to be expedient for the common purpose." (Wharton Criminal Law, 12th ed., § 258.) Gillette accompanied Lushenko and Sessa to the site of the cabin for the purpose of robbing Santelli. Robbery is the felonious taking of personal property in the possession of another person from his immediate presence and against his will, accomplished by means of force or fear. It was contemplated that force or fear would be used. The defendants who entered Santelli's cabin were armed. Hence, one of the probable consequences of the execution of the design was that the weapons would be used on Santelli. There was evidence that Gillette constructed the "sap" found in the cabin. According to the cited rule Gillette could be found guilty of the crime of assault with a deadly weapon. (Accord, *People* v. *Bostic,* 167 Cal. 754 [141 P. 380] ; *People* v. *Vasquez,* 49 Cal. 560.)

 Insofar as Lushenko is concerned, the condition in which he was found would permit the jury to infer that he was the man who committed the assault. They were not compelled to accept his version of the facts, particularly since the two neighbors stood at the front gate of Santelli's cabin for about one-half hour waiting for the sheriff to arrive and in that period of time they did not see anyone leave the cabin.

We are satisfied that there is substantial evidence in the record to support the judgment of conviction as to both Lushenko and Gillette.

Appellants' second contention is that each should have been granted a separate trial. However, the record shows that when the case was called for trial Sessa, who was jointly charged with appellants, was ill and in order that the trial might proceed the public defender, who was representing ap-

pellants, stated: ''I now make a formal motion to separate the cases of Ronald Wayne Lushenko, Eddie Steve Sessa, and Robert LaVerne Gillette to be tried separately insofar as Eddie Steve Sessa is concerned. In other words, the motion would allow us to—if granted by the Court, that we may proceed in the case of Ronald Wayne Lushenko and Robert LaVerne Gillette.'' The motion was granted and the trial proceeded against appellants. Section 1098 of the Penal Code provides that persons jointly charged must be jointly tried unless the court orders separate trials. The record discloses that a separate trial was sought by Sessa because he was ill. The record does not disclose that either Lushenko or Gillette asked for a separate trial. Since a separate trial is not a matter of right, and since the appellants were jointly charged, there is no merit in appellants' contention that the court erred in not ordering them tried separately.

 Appellants next contend that the court erred in not appointing counsel other than the public defender for Gillette, because the public defender was representing Lushenko. The record discloses that at the time of the arraignment each appellant stated that he was without funds to hire counsel and each appellant requested that the public defender be appointed to represent him. The record does not disclose any diversity of interest which would prejudice either by having one counsel representing each of them. Under such circumstances this contention of appellant Gillette is without merit.

The final contention of appellants is that the district attorney was guilty of prejudicial misconduct. During the course of the trial the defense called a Jesse Bonilla who testified on behalf of Gillette. After he was excused, and as he was leaving the courthouse, outside of the presence of the jury, he was arrested for perjury. Defense counsel called this to the court's attention. He asked permission to recall Bonilla so he could explain to the jury why he was arrested. Bonilla was recalled, and he testified that he had been arrested upon leaving the court and that his testimony previously given was the truth. The arrest of Bonilla took place outside of the presence of the jury, and it was defense counsel who brought it to the attention of the jury.

 The general rule is that the arrest of a witness is not prejudicial to the accused where it takes place outside of the presence of the jury. (*People* v. *Myers,* 122 Cal.App. 675 [10 P.2d 498] ; 23 C.J.S., Criminal Law, § 996, p. 358.) In

*Young* v. *United States*, 107 F.2d 490, the court said witnesses were arrested outside of the presence of the jury on a charge of perjury; that the incident was not error where the arrest was not known to the jury except as the accused may have brought it to its attention.

It is therefore clear that appellants' contention of prejudicial misconduct on the part of the district attorney cannot be sustained.

The judgment is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.