### YOUNG v. UNITED STATES.
#### No. 9029.

Circuit Court of Appeals, Fifth Circuit.
Nov. 17, 1939.

Henry H. Jones and Ayres K. Ross, both of Austin, Tex., for appellant.

W. R. Smith, Jr., U. S. Atty., and H. W. Moursund, Asst. U. S. Atty., both of San Antonio, Tex., and Walter S. Howe, Asst. U. S. Atty., of El Paso, Tex., for appellee.

Before SIBLEY, HUTCHESON and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Convicted and sentenced to life imprisonment a second time for complicity in the killing of a federal officer while engaged in the performance of his duties, Ike Young brings this appeal. He secured a reversal of his first conviction mainly because the prosecution was permitted to impeach Hucel Hamilton, a witness introduced by it, by previous contradictory statements under oath without a showing of surprise or entrapment. Young v. United States, 5 Cir., 97 F.2d 200, 117 A.L.R. 316. The nature of the evidence and the contentions of the parties as there set forth need not be repeated. Several of the assignments of error now made we find so clearly without merit as to require no discussion. We will notice those that seem arguable.

■ 1. It was not a wrongful proof of another offense against Young to permit evidence that he was arrested in the act of running an illicit distillery, because the fatal shooting was done immediately afterwards and nearby by one who, as contended by the prosecution, was posted by Young with instructions to prevent by shooting any approach to the distillery. The operation of the distillery was part of the res gestae; and Young's connection with the shooting could not be understood without reference to it.

■ 2. A government witness Vann, without preliminary challenge as to his mental capacity, testified with apparent intelligence on direct and cross examination. On recall he stated that several years before he had been tried for lunacy and a guardian had been appointed, and that he had twice been in a certain asylum. Proceedings dated in 1928 were produced in which a jury had found that Vann was a "person of unsound mind" and "a proper subject for treatment in a hospital for the insane", and an order was made for his commitment. Another record dated in 1932 showed a second commitment by his own consent and his discharge a year later. Each record shows that alcoholism was his trouble. At the close of the trial a motion was made to exclude Vann's testimony and was denied. There was no error. The commitments did not at all adjudge that Vann did not have mind enough to testify as a witness. The fact that he is at large, and in the last instance was formally discharged, indicates that he recovered from his incapacity, such as it was. His present mental capacity to testify was a preliminary question for the Court upon due challenge. Nothing appears that would compel the Court to exclude his testimony.

■ 3. Some of the evidence against Young consisted of his statements made in jail to fellow prisoners touching his connection with and instructions to the man who did the shooting. It is argued that by a Texas statute confessions of one in custody to be admissible must be in writing and signed after the maker was warned as the statute requires. Vernon's Ann.C.C.P. Tex. art. 727. The statute has no application to a criminal case in a federal court. The common law as modified by federal statute controls. The confession or incriminating statement must be freely and voluntarily made, but nothing else is indispensable. A witness to one of Young's statements was a federal officer disguised as a prisoner. That a deceit was thus practiced does not exclude what Young may have freely said to him. It all goes to the jury for them to consider its weight, under caution by the Court that all alleged confessions are to be scanned with care and accepted with caution.

■ 4. Upon a showing of surprise at the testimony of Hazel Hamilton, the District Attorney was allowed to impeach her by showing her inconsistent testimony in the previous trial. There was nothing done contrary to the law as laid down in the previous decision of this Court. The District Attorney showed that he did not know the witness would change her testimony and that she told him she would not. The judge carefully instructed the jury that her previous testimony was not usable as proof, but only to destroy her present testimony if they thought it had that effect.

■ 5. The point of hottest contest is the handling of the witness Hucel Hamilton, a boy of sixteen years. He is the only surviving witness who really saw the shooting. Before the first trial he made

two sworn statements of the occurrence which were unfavorable to Young. He reaffirmed one of them before the grand jury. While in jail afterwards he received a note from his sister Hazel proposing that he change parts of it, and he answered that he would; and did so when he testified at the first trial. This appears in detail in our former opinion. Before the second trial the District Attorney interviewed Hamilton and in substance told him that he considered what was said in the first statements to be the truth; but Hamilton said what he testified in the trial was the truth; to which the District Attorney replied, "Well, you may think so, but you just use your own judgment about that. If you don't tell the truth on the trial this time I am going to file a complaint against you for perjury." The District Attorney also testified he said to Hamilton, "We didn't believe you on the last trial. We think you perjured yourself on the last trial and the reason we did not file against you for perjury was because you were so young. You are old enough now to be tried for perjury and if you perjure yourself on this trial we are going to charge you with perjury and try you for it. You know what the truth is and be sure you tell it." Hamilton persisted that he would testify as in the first trial. The jury having been retired, the whole situation was laid before the judge by witnesses. The District Attorney stated that he felt the only eye witness ought to be produced to the Court and he had produced him, but that he did not indorse his truthfulness and could not use him as a witness, and suggested and moved that the Court call and examine him as its own witness, subject to cross examination and impeachment by both parties. Young's counsel opposed this, saying that it would result in the very situation that arose in the previous trial. There is some confusion in the record as to whether the District Attorney at last requested or opposed the Court's calling the witness. The judge at length announced that he was not acting on anyone's motion, each side having expressly declined to introduce the witness, but that he felt that the situation demanded that the sole eye witness should tell the jury what he knew, and on the authority of books and cases cited in the margin,[1] "the Court will call Hucel Hamilton as the Court's witness and after examining him directly on the case will pass him to the respective parties for further examination and cross examination." When the jury was returned the Court explained to the jury that Hamilton was the only living eye witness, that neither party cared to be bound by his evidence, but the Court felt that in furtherance of justice his evidence should be taken, the Court having no opinion one way or another and desiring only to arrive at the truth; that neither party was offering him or vouching for him, but he was placed on the stand as the Court's witness. The Court told Hamilton not to be uneasy or alarmed, to listen carefully and answer deliberately. The Court then drew from the witness his account of the matter. The District Attorney as part of his cross examination laid the foundation for impeachment by the former contradictory statements and testimony, Young objecting. Young's counsel on cross examination drew out the threat of the District Attorney, the day before to prosecute for perjury. As Hamilton put it, "He told me I had better tell what I told in jail and that if I didn't he was going to send me to the penitentiary. * * * I came here and told the truth today in the face of the District Attorney's telling me he was going to send me to the penitentiary." The impeaching evidence having been all received, it is earnestly argued that the case presents the same prejudicial error that was found in the former trial. We do not think so. The District Attorney did not put Hamilton on the stand in order to impeach him. His original motion that the Court do so has that color, but the Court did not put him up because the District Attorney asked it, but repeatedly said he regarded it as a matter directed to his own discretion. The impeachment which followed did not appear as it did before to have gone to the jury as independent evidence of the truth, but the judge carefully and repeatedly instructed the jury as to its proper use. We cannot assume that the jury misused it. In the presence of the jury he cautioned counsel against any misuse of the impeaching evidence in their arguments, and we must presume that no unfairness occurred there. The authorities referred to by the judge

[1] Underhill on Criminal Evidence, 4th Ed., Sec. 391, p. 763; Litsinger v. United States, 7 Cir., 44 F.2d 45; Hirschfeld v. United States, 7 Cir., 54 F.2d 62; Fournier v. United States, 7 Cir., 58 F.2d 3; Pugh v. State, 69 Tex.Cr.R. 357, 151 S.W. 546; 70 C.J. Sec. 723; Jones' Commentaries on Evidence, Vol. 5, p. 4461.

'uphold his discretionary right to cause to be examined a witness who appears to know important facts but who will not be vouched for by either side. Where the Court thus calls a witness either side may cross examine and either side may impeach him in any regular manner. It is proper in the trial of a serious crime, especially where as here the accused is without great financial resources, that the government present in Court the eye witnesses, that in the event they are not used by the prosecution they may be available to the accused or the Court. If some are not desired to be used by the prosecution, attention of Court and jury can be called to their presence and availability so as to rebut the criticism that truth may have been suppressed. It is not at all necessary to move the Court to introduce them as witnesses; accessibility to the accused, that he may interview and use them if he wishes, is enough. If he declines, then the right of the Court to call them arises, to be exercised according to his own discretion in aid of truth and justice and not on motion of either side. No error appears in what was done here.

6. It is assigned as error that the Court did not declare a mistrial when it appeared that the District Attorney "had threatened" the witness Hucel Hamilton. We find no motion for a mistrial in the record. The District Attorney contends that what occurred was not an improper threat but only a warning. Under all the facts and circumstances we think what was said would likely be understood and was in fact understood by the witness as a threat of prosecution for perjury' if he did not stand on his first sworn statements. The prosecuting attorney ought to be very careful not to appear to threaten a witness. The judge correctly disapproved of what was done, and in the jury's absence said he would have granted a mistrial if it had appeared that Hamilton had been moved by what Hamilton thought was a threat. Since what got to the jury was that Hamilton in spite of threat was standing on what he now says as true, the whole thing worked out to the advantage of the accused, and there was no cause for mistrial with or without motion therefor.

7. The District Attorney did have Hamilton and his sister arrested for perjury after their testimony was concluded, but not in open Court. Young afterwards sought to recall them to the witness stand.

As we read the record the only purpose was to prove these arrests. The judge held them irrelevant to the case on trial, we think correctly. Unless Hamilton or his sister were likely to flee, it would have been more decorous for the government to have withheld its hand in this matter until the trial was over, but the arrest out of Court of these witnesses after they had testified, unknown to the jury except as Young may have brought knowledge to them, is not an error in the trial.

8. The evidence, if believed, was sufficient to convict. The motion for a directed verdict was rightly overruled.

Judgment affirmed.