Robert A. WOODRING, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17013.

United States Court of Appeals Eighth Circuit.

Jan. 8, 1963.

Rehearing Denied Feb. 1. 1963.

418

Wayne H. Bigler, Jr., St. Louis, Mo., Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, Mo., on the brief, for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., D. Jeff Lance, U. S. Atty., St. Louis, Mo., on the brief, for appellee.

Before VOGEL and VAN OOSTERHOUT, Circuit Judges, and VAN PELT, District Judge.

PER CURIAM.

Robert A. Woodring, appellant-defendant herein, was charged by a grand jury in a seven-count indictment, the first six counts of which alleged use of the mails to defraud in violation of 18 U.S.C.A. § 1341. The seventh count charged a violation of 18 U.S.C.A. § 1343, which proscribes fraud by interstate wire, radio or television. At a jury trial commencing on December 4, 1961, and concluding on December 7, 1961, Woodring was acquitted on Counts 1, 2, 3, 5 and 7. During the trial and at the conclusion of the evidence, Count 6 was dismissed on motion of the United States Attorney. The jury found Woodring guilty on Count 4. He was thereafter sentenced to three years' confinement. This is an appeal from the judgment of conviction.

Two errors are alleged:

"I.

"The Comments and Cross-Examination by the Trial Judge During the Testimony of the Three Chief Defense Witnesses Was Plain Error and Prejudiced the Jury Against Appellant, Deprived Him of a Fair and Impartial Trial and Resulted in His Conviction on Count 4.

"II.

"The Dismissal of Count 6 Immediately Before the Case Was Submitted to the Jury Without Appellant's Consent Prejudiced Appellant's Defense to Count 4 of the Indictment."

The indictment alleged that Woodring, as president of the Youngstown Home Improvement Company, schemed to obtain money by false pretenses. He allegedly induced persons to invest money

in Youngstown by falsely representing that: He needed employees and partners, that the company was a profitable and well established concern, successfully operating in the home improvement field, that there existed inventory security for the investments, that the investors would receive large profits and commissions, that they would receive university training, that they would have control of company funds, that the company had substantial value, that he would repurchase stock of any unsatisfied investor, and that the company, not Woodring, was to receive the money thus invested. To carry out this alleged scheme, Woodring placed advertisements in a newspaper which called for answers through the mails. It was also alleged in Count 7 that he made an interstate telephone call soliciting one such investment.

Six persons ultimately invested varying amounts of money in the corporation and received stock in return. Five of these investors came into the company in late 1959 or early 1960. Use of the mails and interstate telephone to defraud as to them was charged in Counts 1, 2, 3, 5 and 7. Woodring was acquitted on all such counts.

The sixth investor was one Leonard Herman. Youngstown had issued but 100 shares of stock. Some of such shares had been sold to those who had invested in late 1959 or early 1960. Dissension between those investors and Woodring developed in the operation of the business by May or June, 1960. Some of the investors had dropped out and were requesting a return of their money. On June 26, 1960, appellant placed an advertisement in the St. Louis Post-Dispatch in the column "Partners Wanted", which read as follows:

"Man who is honest and sincere and is seeking same with a Gentile partner: I have a very profitable and expanding business but need a partner to expand: $6,000 required; references."

Herman used the mails to respond to Woodring's advertisement. The ensuing negotiations culminated on August 10, 1960, in Herman's paying $6,000 to Woodring for 50 shares of Youngstown in order to become "a full partner" with Woodring. (Prior investors had paid from $1,000 to $2,000 per share.) During the negotiations between Woodring and Herman, Woodring led Herman to understand that the corporation bank account had funds in it exceeding $6,000 and that with Herman's $6,000 the corporation assets would total approximately $12,000. On the day Herman closed the deal by giving Woodring his check for $6,000, the two went to the Lindell Trust Company, where they signed a signature card which provided that their two signatures were necessary to make withdrawals from the account of the Youngstown Home Improvement Corporation. At that time, there was a balance in the corporation account of $6,-504.69. Later that day, without Herman's knowledge or consent, Woodring withdrew the corporation's funds from its checking account, such withdrawal resulting in an overdraft the next day when other checks he had issued were presented for payment. He also deposited Herman's $6,000 in his personal account. At the time of the negotiations between Woodring and Herman, Woodring did not own the remaining 50% of the stock of Youngstown nor did he disclose that fact to Herman. In defense, he claimed he intended to purchase back other outstanding shares so that he and Herman would each own 50%. No evidence of such attempts to purchase was disclosed. On the day following that on which he received and cashed Herman's check and withdrew the corporation's funds from its account, which he claimed were commissions due him, he called Herman on the telephone and told him that his doctor had advised him to take a vacation for health reasons. His explanation to the jury for withdrawing the corporation's funds and keeping Herman's $6,000 was that there was still left $12,000 worth of corporation assets represented by equipment, signed contracts

and accounts receivable. Herman had no opportunity to participate in any of the affairs of the company. Business activities of the company appeared to cease completely following his becoming a full partner.

Count 4 of the indictment, on which Woodring was convicted, deals with his transactions with Herman and Herman having used the mails to respond to Woodring's advertisement in the St. Louis Post-Dispatch. Evidence of Woodring's guilt in connection with the charge contained in Count 4 was most substantial, whereas evidence supporting the charges contained in the other five counts was not nearly so convincing.

 It is earnestly contended on behalf of the appellant that he was deprived of a fair and impartial trial by reason of comments made by the trial judge and cross-examination conducted by the trial judge of the defendant and his witnesses. We have read the entire transcript of 388 pages of the witnesses' testimony taken during the trial. It is true that the judge did interrupt the examination and cross-examination of the defendant and his witnesses on a number of occasions. It is also true that he made some comments during the trial which reflected skepticism with reference to the statements made by some of the witnesses and their willingness to make fact disclosures and that some of the questions asked could have come much better from the prosecutor than the court. In only one instance was an objection made to the trial judge's questioning or to his comments. On that one occasion the judge had chided the defendant for not reading correctly to the jury from a document which he held in his hands. It was obvious that the defendant was not quoting accurately. We think it fair to say, however, that generally the trial judge's purpose in interjecting himself into the examination of the defendant and his witnesses had for its objective the clarification of facts for the jury in a case where some of those testifying were forgetful, obtuse or un-

cooperative. However, the understanding impatience of the judge with a witness who misreads a document he holds in his hand, a witness who testifies that *from his own knowledge* the company had orders for "better than a hundred thousand dollars", which latter statement is disclosed upon the court's questioning to be based solely upon a hearsay statement of the defendant himself, and a witness who was lax in preparation and careless in statement does not justify the court's injudicious statements and vigorous cross-examination as disclosed by the record before us here. We cannot approve the practice and must conclude that the extent to which the trial court participated was unnecessary and to a degree improper. See Hargrove v. United States, 8 Cir., 1928, 25 F.2d 258.

While we find that the comments of the trial judge and his participation in the questioning of the defendant and his witnesses exceeded the bounds of judicial propriety, we must nevertheless also conclude that such activities prejudiced the defendant before a new trial may be ordered on such grounds. As Judge John Sanborn expressed it for this court in Goldstein v. United States, 8 Cir., 1933, 63 F.2d 609, 613:

" * * * An appellate court should be slow to reverse a case for the alleged misconduct of the trial court, unless it appears that the conduct complained of was intended or calculated to disparage the defendant in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits."

See also United States v. Aaron, 2 Cir., 1951, 190 F.2d 144, certiorari denied Freidus v. United States, 1951, 342 U.S. 827, 72 S.Ct. 50, 96 L.Ed. 626; Garber v. United States, 6 Cir., 1944, 145 F.2d 966; Hargrove v. United States, 8 Cir., 1928, 25 F.2d 258. While we are convinced here that impropriety has been established, we nevertheless conclude, for the reasons hereinafter stated, that no prejudice resulted.

At no time during the presentation of the testimony or during his charge to the jury did the trial judge here express an opinion as to the facts nor did he comment directly upon the witnesses and their testimony, although it was his prerogative so to do. Buchanan v. United States, 8 Cir., 1926, 15 F.2d 496; Quercia v. United States, 1933, 289 U.S. 466, at page 469, 53 S.Ct. 698, at page 699, 77 L.Ed. 1321, where the court stated:

"In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. Herron v. Southern Pacific Co., 283 U.S. 91, 95 [51 S.Ct. 383, 75 L.Ed. 857]. In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination. Carver v. Jackson, 4 Pet. 1, 80 [7 L.Ed. 761]; Vicksburg & Meridian R. Co. v. Putnam, 118 U.S. 545, 553 [7 S.Ct. 1, 30 L.Ed. 257]; United States v. Philadelphia & Reading R. Co., 123 U.S. 113, 114 [8 S.Ct. 77, 31 L.Ed. 138]; Capital Traction Co. v. Hof, 174 U.S. 1, 13, 14 [19 S.Ct. 580, 43 L.Ed. 873]; Patton v. United States, 281 U.S. 276, 288 [50 S.Ct. 253, 74 L.Ed. 854]."

See McCoy v. Blakely, 8 Cir., 1954, 217 F.2d 227, 233; United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, 593–595; Stokes v. United States, 8 Cir., 1920, 264 F. 18, 25; United States v. Worcester, D.C.Mass., 1961, 190 F.Supp. 548, 561.

The judge's charge to the jury in this case is a model of studied impartiality. He carefully directed attention to the contentions of both parties without emphasizing one over the other and without in any manner whatsoever indicating any opinion as to such contentions or the witnesses offered in support thereof. He clearly, emphatically and at length and on a number of occasions pointed out that it was the sole responsibility of the jury to determine the credibility of the witnesses and the weight that should be given to their testimony. Additionally, as if to destroy any possible prejudice from his having participated in the cross-examination of witnesses and from his comments, he said:

"During the course of the trial I occasionally ask questions of a witness in order to bring out facts not then fully covered in the testimony.

Do not assume that I hold any opinion on the matters to which my questions relate. Remember that at all times that you as jurors are at liberty to disregard all comments of the court in arriving at your finding as to the facts.

"If in the course of these instructions, and if during the trial, I have said anything that indicates to you how the court might feel, or how you think the court feels with respect to the testimony in this case, and that opinion is different from your opinion of the testimony, you are to accept your opinion of the testimony rather than the court's, because it is your sole province to pass on the testimony, and from the testimony you pass on the credibility of the witnesses, and with that the court has nothing to do, just as you, as members of the jury, have nothing to do with determining what the law is in this case."

If there was error in the judge's participation in the trial, we are forced to conclude that by his meticulously careful charge the effects of such error were

dissipated and that no prejudice resulted. See Garber v. United States, 6 Cir., 1944, 145 F.2d 966, 971–974; United States v. Aaron, supra.

Additionally, it is manifest here that the jurors gave careful consideration to the evidence and arrived at their own conclusions. This is clearly indicated from the fact that on Counts 1, 2, 3, 5 and 7 they found the defendant not guilty —this in spite of the fact that most, if not all, of the judge's questions were directed to activities concerned in such particular counts. All of the activities dealt with in Counts 1, 2, 3, 5 and 7 were much earlier in point of time than those with which Count 4, on which the defendant was found guilty, were concerned. It could very well be that under the court's careful instructions with reference to criminal intent the jurors concluded that as to Counts 1, 2, 3, 5 and 7 the government had failed to establish that essential element which is a prerequisite to a determination of guilt, but that as to Count 4, which concerned activities immediately before the company ceased doing business, the intent to defraud had been established. The evidence offered fully justifies such conclusions.

The defendant cites to us a number of cases in which reversal was had partly because the trial judge participated in the examination of witnesses to an improper degree, thereby departing from that impartiality to be expected of a judge on the bench. In United States v. Brandt, 2 Cir., 1952, 196 F.2d 653, a reversal and new trial were required, both because of the judge's conduct during the course of the trial as well as the nature of his charge to the jury. The "cumulative effect" of the trial judge's participation in the prosecution through the asking of more than 900 questions during an eight-day trial and error in the charge by informing the jury that he had refused defense counsel's requested charge on the import of certain honest disclosures the defendants had made during an investigation by the Postal authorities obviously called for a reversal. In the opinion, however, the Court of Appeals of the 2nd Circuit stated, at page 655 of 196 F.2d:

"A trial judge conducting a case before a jury in the United States courts is more than a mere 'moderator,' Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Montrose Contracting Co. v. Westchester County, 2 Cir., 94 F.2d 580, 587, certiorari denied Westchester County v. Montrose Contracting Co., 304 U.S. 561, 58 S.Ct. 943, 82 L.Ed. 1529, but he is decidedly not a 'prosecuting attorney,' United States v. Guertler, 2 Cir., 147 F.2d 796, certiorari denied 325 U.S. 879, 65 S.Ct. 1553, 89 L.Ed. 1995; Hunter v. United States, 5 Cir., 62 F.2d 217, 220. He enjoys the prerogative, rising often to the standard of a duty, of eliciting those facts he deems necessary to the clear presentation of the issues. Pariser v. City of New York, 2 Cir., 146 F.2d 431. To this end he may call witnesses on his own motion, adduce evidence, and himself examine those who testify. See United States v. Marzano, 2 Cir., 149 F.2d 923; Guthrie v. Curlett, 2 Cir., 36 F.2d 694; Young v. United States, 5 Cir., 107 F.2d 490, 493; 3 Wigmore on Evidence § 784, 3d Ed. 1940. But he nonetheless must remain the judge, impartial, judicious, and, above all, responsible for a courtroom atmosphere in which guilt or innocence may be soberly and fairly tested."

Among others, appellant also relies on United States v. De Sisto, 2 Cir., 1961, 289 F.2d 833. Therein a new trial was required because the trial judge indulged in extensive questioning of defendant and his witnesses and also repeatedly belittled the efforts of one of the defendants to establish an alibi. In that case, the judge asked 3,115 questions of all witnesses. The prosecutor asked but 1,381, defense counsel 3,330. The judge's questions to the defendant De Sisto to-

talled 306, the prosecutor's 347, and defense counsel's, 201. After referring to these figures, the court stated, at pages 834–835 of 289 F.2d:

> " * * * It is indeed an impressive proportion, but no such mathematical computation is of itself determinative. However, taking all this in conjunction with the long and vigorous examination of the defendant himself by the judge, and the repeated belittling by the judge of defendant's efforts to establish the time that Fine left the pier, we fear that in its zeal for arriving at the facts the court here conveyed to the jury too strong an impression of the court's belief in the defendant's probable guilt to permit the jury freely to perform its own function of independent determination of the facts. United States v. Brandt, supra, 196 F.2d at page 656. We do not feel that it was possible to remove the impression by the instructions given in the charge."

Agreeing with what the court said in De Sisto, we still do not find that its determination of that case requires a reversal here. The situations are by no means comparable.

We have considered all of the cases cited in behalf of the appellant and find them to be distinguished on the facts or to involve other substantial errors in themselves necessitating reversal. Here, after a careful consideration of the entire record, we conclude there was error but no resulting prejudice.

■■ Appellant's second claim of error is based upon the court's "dismissal" of Count 6 before the case was submitted to the jury and without appellant's consent. Count 6 charged that on or about June 28, 1960, Robert A. Woodring, for the purpose of executing a fraudulent scheme, placed or caused to be placed in an authorized depository for mail matter a letter from the Youngstown Home Improvement Corporation and addressed to "Mr. John Curry, #6 Rose Court, Florissant, Missouri", to be sent and delivered by the Post Office Department of the United States. The record does not disclose what was said with reference to Count 6, but appellant states in his brief as follows:

> "At the conclusion of all of the evidence the Court, out of the hearing of the jury, and off the record, stated to government counsel at length that Count 6 of the indictment should be dismissed. The prosecution thereupon stated that it would dismiss Count 6 of the indictment. Appellant's counsel took no part in this discussion but did not object.

> "The record shows only the Court's statement 'Let the record show that Count 6 is dismissed'."

Appellant cites and relies on Rule 48(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which provides as follows:

> "The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

While the record does not disclose the court's reason for dismissing Count 6, it is perfectly obvious that it did so because the testimony offered by the government failed to substantiate the charge alleged in Count 6 and had the defendant been found guilty thereon, the court would have had to set aside the conviction as not being based on substantial testimony. That being so, it was the court's duty to direct an acquittal as to such count. That he directed that Count 6 be "dismissed" instead of directing an acquittal we think of no moment, for obviously the dismissal was with prejudice, the appellant having been placed in jeopardy in connection with Count 6. In any event, there could not possibly be prejudice to the defendant unless he was

subsequently reindicted for the same charge alleged in Count 6. Having been placed in jeopardy in connection with that charge once, the government could not, of course, succeed in such reindictment.

The purpose of Rule 48(a), F.R.C.P., 18 U.S.C.A., is to protect a defendant from harassment by the government through charging, dismissing and then re-charging without placing a defendant in jeopardy. If a trial has been commenced, a defendant has a right to insist upon a disposition on the merits and may properly object to a dismissal without prejudice. The second sentence of Rule 48(a) is merely a restatement of pre-existing law. Here at the close of the government's testimony defendant moved for an "acquittal" on all seven counts of the indictment, making particular reference to Count 6 as follows:

> "As further ground for said motion, defendant alleges that the goverment's evidence affirmatively shows that such a scheme to defraud did not exist at the time of the mailing of the letter set out in Count 6 of the indictment * * *."

The court reserved ruling, but at the close of all the testimony directed that Count 6 be "dismissed". Immediately after the court stated in front of the jury, "Let the record show that Count 6 is dismissed.", the defendant moved the court to "dismiss Counts 1 through 5 of the indictment * * *" and "that the court dismiss Count 7 of the indictment * * *", thereby urging like action as to all remaining counts. We see no possible prejudice to the defendant on this point.

We have examined the entire transcript here with care and are of the opinion that the defendant had a fair and impartial trial, that substantial testimony justifies his conviction on Count 4 of the indictment and that the judgment of conviction should be affirmed.