No. 22098.
No. 22199.

FRANK FRENSLEY MOORE, A/K/A WALTER MACKERMAN,
A/K/A JOHN DOE *v.* THE PEOPLE OF THE STATE OF COLORADO.
(434 P.2d 132)

Decided November 20, 1967. Opinion modified and as modified
rehearing denied December 11, 1967.

HAYDEN W. KANE, RICHARD C. WEBSTER, FRANK F. MOORE, pro se, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, GEORGE E. DEROOS, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

FRANK MOORE, hereinafter referred to as the defendant, was charged by a direct information filed on April 2, 1964 with the crime which is commonly referred to as

aggravated robbery. C.R.S. 1963, 40-5-1. The specific charge was that the defendant, after assaulting an employee of the R.E.A. Express in Colorado Springs, took from him 53 American Express Orders, 171 American Express Travelers Cheques, and one .38 caliber revolver, and further that when he thus robbed the aforementioned employee the defendant was armed with a dangerous weapon with the intent, if resisted, to maim, wound or kill the employee.

One of the principal points raised by the defendant in this Court relates to the refusal of the trial court to grant his *fifth* request for a postponement of his trial. Hence, a brief chronology of certain proceedings occurring prior to the actual trial of this case is in order. On April 3, 1964 the defendant was arraigned on the aforementioned charge, at which time and place he was represented by counsel of his own choosing. On this occasion the defendant pled not guilty and the case was set for trial to a jury on June 23, 1964.

On June 12, 1964 the defendant asked that the aforementioned trial date be vacated. The trial court agreed to this request, and vacated the trial setting which had theretofore been set, as already above noted, for June 23, 1964. At this particular time the defendant was apparently in the process of changing counsel. In any event, the matter was then continued to July 14, 1964 for resetting. On July 14, 1964 the case was by agreement set for trial on October 20, 1964. By this time the defendant was at liberty, on bond.

On October 15, 1964 the defendant then filed his *second* motion for a continuance of his trial. The principal ground urged by the defendant in support of this particular motion was that because he had paid some $2,500 in order to obtain his release on bond, he was at the moment without funds to pay the expenses of certain witnesses residing in Texas who were essential to his defense. This motion, over strenuous objection

by the district attorney, was granted and the case reset for trial to a jury on January 4, 1965.

On January 4, 1965 the defendant filed his *third* motion for a continuance. This time the motion was grounded on the assertion that, despite due diligence on his part, the defendant was unable to locate an important witness, one Orr, who would allegedly corroborate his defense of alibi. This particular motion was granted without objection, and the case then reset for trial on March 16, 1965.

On March 16, 1965 the defendant filed his *fourth* motion for a continuance, again alleging that he was unable to locate the missing witness Orr. This motion was also granted and the case reset for trial on April 27, 1965.

On April 27, 1965 the defendant filed his *fifth* motion for a continuance. This time he claimed that though he had finally located the witness Orr, nevertheless Orr was then confined to a hospital in Fort Worth, Texas and accordingly unable to attend the trial. Attached to this motion was the affidavit of Orr that he was then confined to a hospital in Fort Worth and that his testimony would be that he was with the defendant in Fort Worth on the very day when the robbery of the office of the Railway Express Agency in Colorado Springs occurred. Also attached to the motion was a written statement of one of the hospital staff who "certified" that Orr was then a patient in the Harris Hospital in Fort Worth. There was, however, no affidavit from any doctor as to the unavailability of this witness for the purpose of testifying during the course of the trial.

As above noted, this *fifth* motion for a continuance was filed on the very date the trial was scheduled to commence. The trial court, after having listened to the statements of counsel, as well as having taken extensive testimony from the defendant, denied the motion. The matter then proceeded to trial. The jury

adjudged the defendant guilty, and the trial court then sentenced him to a term of from 30 to 40 years in the state penitentiary. By this writ of error the defendant now seeks reversal of the judgment and sentence thus entered.

As already indicated, perhaps the defendant's chief assignment of error is the refusal of the trial court to grant the motion for a continuance which was filed on April 27, 1965. In denying the motion, the trial court made the following explanatory statement:

"Defendant's motion is denied for the following reasons: The Court is of the opinion that there is inadequate showing that Dr. Orr or Mr. Orr could not be available at the time needed in this trial for the defendant, the absence conspicuously being noted by the Court of an affidavit of the doctor for this witness stating his inability to attend. The evidence before the Court is that the doctor was available and did talk to the defendant; no showing that he could not have produced an affidavit from him. By the defendant's own testimony here taken now in the absence of the panel there were other witnesses available or — presumably are still available to testify to the same facts that Dr. Orr will testify to as to the presence of the defendant in Fort Worth on that particular day in question. The Court further finds that there is a deviation in the substance of the affidavit of Dr. Orr and the testimony of this defendant which does not appear to be consistent with each other. The Court feels that in the interest of both the People and the defendant that we proceed to trial as regularly scheduled on this day."

In order to put this particular assignment of error in proper focus, a bit of detail is perhaps helpful. Upon trial the defendant testified that on the day of the robbery he was in Fort Worth, Texas. He elaborated by stating that on a part of that particular day he was with his family. In support thereof, his wife and their 13 year old child corroborated his testimony.

The defendant went on to testify that on this particular day he also was in the company of one Orr, and that the two of them during the course of the day contacted a Mr. Bell and a Miss Northcutt in Fort Worth. Mr. Bell, incidentally, was apparently slated to be called as a witness for the defendant. At least during the course of the trial the statement was made by counsel that Bell was at that moment en route from Texas to Colorado Springs. However, Bell apparently did not make it to the court house. In any event, he was not called to testify.

Later on, in connection with the defendant's motion for a new trial, the district attorney tendered an affidavit from the Harris Hospital which indicated that Orr had actually been released therefrom on the day before the trial was finally concluded. The obvious inference from this, of course, was that Orr therefore *could* have thereafter come to Colorado, if he, and defense counsel, had been so inclined.

These various matters which occurred during and after the trial of this case have been set forth in order that the complete picture may be seen. However, the precise issue to be resolved now is whether the trial court on April 27, 1965 abused its discretion when it denied the defendant's motion for a continuance. In our judgment there was no such abuse of discretion on the part of the trial court.

Concerning the granting or denial of a motion for a continuance in a criminal proceeding, the general rule is that this is a matter lying within the sound discretion of the trial court and — absent a showing of abuse — its ruling thereon will not be disturbed. *Baca v. People*, 139 Colo. 111, 336 P.2d 712 and *Honda v. People*, 111 Colo. 279, 141 P.2d 178. A reading of the explanatory statement made by the trial court as to just why it was denying the motion for a continuance demonstrates quite clearly that it was not acting in any high-handed or cavalier fashion.

■ In this connection it should be noted that the motion for a continuance was not filed until the very moment of the trial. The People's witnesses, several of whom were from out of state, were in attendance. Also, it was quite evident from the defendant's own testimony that Orr was not the only person who could corroborate the defendant's alibi. It was in this setting, then, that the trial court denied the defendant's motion for a *fifth* continuance of the trial. In our view the action of the trial court in denying this motion did not under the circumstances, as set forth above, constitute an abuse of discretion and hence we perceive no error in this regard on the part of the trial court.

The defendant next contends that the trial court erred in permitting an Arkansas policeman to testify as to the details of the arrest of the defendant in Arkansas, some five or six weeks after the robbery in Colorado Springs. Such arrest, according to the defendant, was tied into an illegal search and seizure.

Upon trial, it developed that the defendant and one Crocker were arrested in Arkansas some five or six weeks after the robbery of the Railway Express office in Colorado Springs. They were arrested in an automobile owned and then being driven by Crocker. Crocker was asked by the arresting officer, one Owens, to produce a certificate of ownership and when he was unable to do so, he was arrested on suspicion of car theft. The arresting officer then asked Crocker if he could inspect the trunk of the vehicle, to which Crocker readily assented. While Crocker and the officer were inspecting the trunk, the officer, Owens, testified that he saw the defendant, who had been riding as a passenger in the front seat of the vehicle, turn around in the seat and aim a gun directly at him. The officer, dropped to the ground and ordered the defendant to come out of the car with his hands up. This the defendant did. Moments later, only after the defendant and Crocker were in the custody of other officers who had

come in to assist, officer Owens espied the gun, which the defendant had minutes before aimed at him, lying on the open door of the glove compartment. Owens promptly proceeded to take possession of this gun, which happened to be a .38 caliber revolver. It was later established that this particular gun had been stolen in the aforementioned robbery of the Railway Express office in Colorado Springs.

A few hours later this same officer for a second time, and in greater detail, inspected the trunk of Crocker's automobile and on this occasion found in the defendant's suitcase certain money orders which also had been stolen in the Colorado Springs robbery.

Upon objection, the trial court ruled that the aforementioned money orders were inadmissible evidence because they were obtained in an unlawful search and seizure. However, the trial court ruled that the above described gun was obtained as an incident to a lawful arrest, and therefore was admissible in evidence. The defendant cites this latter ruling as error. We find no error in this regard. The ruling of the trial court was quite correct and is in line with our several pronouncements on this subject. See, for example, *Martinez v. People,* 162 Colo. 195, 425 P.2d 299; *Baca v. People,* 160 Colo. 477, 418 P.2d 182; *Casias v. People,* 160 Colo. 152, 415 P.2d 344, and *Alire v. People,* 157 Colo. 103, 402 P.2d 610.

The defendant next contends that it was error to receive in evidence the testimony of a certain F.B.I. agent, named Lish. Lish testified that he questioned the defendant in the city jail in Dallas, Texas, where the defendant had been taken immediately after his arrest in Arkansas. According to Lish, the defendant orally confessed that it was he, and two others, who held up the Railway Express office in Colorado Springs.

Under Texas statutory law, this confession apparently would be inadmissible evidence, it being an oral confession and not a written one. The defendant

argues that in this regard the Colorado courts should apply the Texas law and hold that the confession, being oral, was inadmissible. Our attention has not been directed to any authority which would support this assertion. The general rule is that in the absence of a constitutional or statutory provision to the contrary, a confession, if otherwise admissible, is not rendered inadmissible because it is oral and not written. 23 C.J.S. 154. See, also *People v. Fitzgerald,* 56 Cal. 2d 855, 366 P.2d 481, 17 Cal. Rptr. 129; *Commonwealth v. Williams,* 197 Pa. Super, 184, 176 A.2d 911; and *Bland v. State,* 166 So.2d 728 (Ala.). And Colorado would appear to be in line with this general rule. See *Feldstein v. People,* 159 Colo. 107, 410 P.2d 188; *Torres v. People,* 149 Colo. 314, 369 P.2d 80; *Schneider v. People,* 118 Colo. 543, 199 P.2d 873, and *Mitchell v. People,* 76 Colo. 346, 232 P. 685.

██ In Colorado, then a confession, otherwise admissible, is not rendered inadmissible simply because it is oral, and not written. This being an evidentiary matter, we hold that the law of the forum prevails. See *State v. Lorain,* 141 Conn. 694, 109 A.2d 504, where it was held that the admissibility of evidence relates to judicial procedure and is determined by the law of the forum. Hence, the Colorado law on this particular matter governs, and not the Texas law. To hold to the contrary would certainly give rather vast extra territorial effect to the law of Texas. In this same general connection, see also *Young v. United States,* 107 F.2d 490, where the United States Court of Appeals, Fifth Circuit, held that the Texas statute regarding the admissibility of oral confessions had no application to a criminal proceeding in a United States District Court in Texas. Suffice it to say, then, we perceive no error by the trial court in this regard.

Although certain matters were not contained in the motion for new trial, the defendant nonetheless argues in this Court that the trial court erred in two additional

particulars: (1) in refusing to strike the word "aggravated" from the information; and (2) in its handling of the issue as to whether the Texas confession was voluntary.

Colo. R. Crim. P. 37(b) states that *only* those questions which are presented in a motion for a new trial are to be considered by us on review, with the safeguard proviso that "plain error or defects affecting substantial rights" may be noted by us although they were not brought to the attention of the trial court. The two additional matters, neither of which were contained in the motion for a new trial, in our view do not even constitute error, let alone "plain error" affecting "substantial rights."

■ The use of the word "aggravated" in the information, though perhaps not an ideal practice, is still a matter of form only and was not raised by the defendant until the trial proper. And there was no objection to those instructions which also used the word "aggravated." Certainly this did not constitute plain error affecting substantial rights.

■ As to the confession, it was the defendant's general position that he did *not* confess to the commission of the robbery. However, before any testimony as to the oral confession was permitted to be received by the jury, the trial court held an *in camera* hearing as to whether the confession was voluntary. The witness Lish's testimony was to the effect that the confession was completely voluntary. The defendant, though still denying that he confessed, related all the supposed indignities which were allegedly heaped on him by the Dallas jailers. The trial court, on conflicting evidence, then ruled that factually and legally the confession was voluntary, and submitted the matter under proper instructions to the jury. Such procedure was held by us in *Feldstein v. People, supra,* to be in accord with the mandate of *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed2d, 908. Suffice it to say, then, that under

232

such circumstances this particular matter does not constitute plain error affecting substantial rights.

The judgment is therefore affirmed.