STATE of Missouri,
Plaintiff-Respondent,

v.

Mildred Ann SIMON,
Defendant-Appellant.

No. 13321.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 16, 1984.

Motion for Rehearing or to Transfer
Denied Nov. 7, 1984.

 

Margaret Elise Branyan, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., Richard Baugh, John M. Morris, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant Mildred Simon guilty of murder in the second degree, § 565.004,[1] and assessed her punishment at ten years' imprisonment. Defendant appeals. Defendant does not challenge the sufficiency of the evidence to support the verdict.

Defendant contends that the trial court erred in overruling her motion to suppress a statement, reduced to writing and admitted into evidence as state's Exhibit 58, which she gave on September 3, 1982, in Newburgh, New York, to Det. Sgt. Phillip Ginquitti of the Newburgh Police Department. Defendant was born on December 11, 1965. The statement was given in the presence of defendant's mother Julia Decker. Also present was Det. William Engle of the Youth Division of the City of Newburgh Police Department. The statement was incriminating.

Defendant asserts that her statement should have been suppressed on the following grounds: (a) she did not make a knowing, voluntary and intelligent waiver of her constitutional rights to remain silent and to counsel; (b) the statement was elicited in violation of § 211.061.1 and several Juvenile Court Rules,[2] including Rule 122.05, because she "was not immediately taken before the juvenile court or a juvenile officer upon arrival at juvenile court, the manner of taking the statement was violative of her rights as a juvenile, and she was not informed that her statement could or would be used against her in a criminal proceeding."

Sec. 211.061.1 reads:

"1. When a child is taken into custody with or without warrant for an offense, the child, together with any information concerning him and the personal property found in his possession, shall be taken immediately and directly before the juvenile court or delivered to the juvenile officer or person acting for him."

A "child," as used in Chapter 211 dealing with juvenile courts, is "a person under 17 years of age." § 211.021(2). Defendant was a child at the time Exhibit 58 was obtained.

Juvenile Rule 122.05, which became effective January 1, 1982, reads:

"Prior to in-custody interrogation, the juvenile shall be advised by the juvenile officer that he has the right to remain silent, that he has the right to an attorney and if he is unable to afford an attorney that one will be provided for him, that whatever he says to the juvenile officer or juvenile court personnel cannot be used in any proceedings except in juvenile court, that if he does talk he has the right to stop talking at any time *and that whatever he says to the police or others than the juvenile officer or juvenile court personnel may be used against him in the event he is prosecuted as an adult.*" (Emphasis added.)

A "juvenile" is a person under the age of 21 years who is subject to the jurisdiction of the juvenile court. Rule 110.05(a)(9).

The murder victim was Emmanuel Tebo and the offense took place on November 16, 1981, in Springfield. The state's evidence showed that the actual killer was Tim Hayes, defendant's boy friend. The state's theory was that defendant aided

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

2. In addition to Rule 122.05, defendant cites Rule 111.02, Rule 111.04, and Rule 116.01, dealing, in part, with taking a juvenile to a juvenile officer, the juvenile's right to representation by counsel, and waiver of that right.

Hayes in stealing the victim's automobile and that fatal blows were inflicted on the victim in furtherance of the larceny.

On the day following the murder, Tebo's car was found near St. Louis where defendant and Hayes had abandoned it. Defendant and Hayes hitchhiked to Newburgh, New York, where defendant lived with her mother. For several months New York authorities had been unsuccessful in trying to locate defendant at her home in Newburgh, but her family knew that defendant was wanted by Missouri authorities in connection with the homicide. On September 3, 1982, defendant's brother telephoned Newburgh police Sgt. Phillip Ginquitti and informed him that defendant wanted to surrender herself. Sgt. Ginquitti and Det. Engle went to defendant's home shortly before noon.

At the hearing on the motion to suppress,[3] Sgt. Ginquitti, the only witness concerning the circumstances surrounding the taking of the statement, testified, under direct examination by the prosecutor, that he told defendant and her mother that defendant was under arrest on a murder charge "out of Springfield, Missouri." Ginquitti was wearing a suit "with a sports jacket" and was carrying a pistol although it was not visible. Engle was in plain clothes. The two men were accompanied by two uniformed patrol officers who resumed their patrol after Engle and Ginquitti took defendant into custody.

Defendant was given "five to eight minutes" to get dressed and then the foursome, consisting of Engle, Ginquitti, defendant and her mother, went to the Youth Bureau. Ginquitti "gave her the *Miranda* warnings which I read to her from a card, which she signed." On the back of that card[4] defendant wrote that she understood

the rights that had been read to her, that she would answer Ginquitti's questions without an attorney being present, and that she was not represented by an attorney in any other criminal matter. The card was signed at 12:05 p.m.

Ginquitti stated that no threats or promises of leniency were made to defendant and that she appeared to understand the warnings. Ginquitti then interviewed her orally in the presence of her mother. He commenced typing the statement at 1 p.m. and it was completed at 2:12 p.m. No one left the room or indicated a desire to do so during the taking of the statement. Several times defendant said she wanted to talk to her mother privately and was permitted to do so. Defendant was not distraught except when she described the beating of Tebo by Hayes.

Ginquitti testified that he turned defendant over to the City of Newburgh juvenile authorities and "they went to the Family Court and made arrangements with Missouri." Ginquitti also said he "turned the statement over to Missouri authorities as an investigative tool.... I don't know what your rules are in Missouri."

Significantly, under cross-examination by defense counsel, Ginquitti gave the following testimony:

Q. Now it's your testimony that all you told the defendant about this statement was that it would be sent to Missouri and along with any statement of cooperation, if she cooperated, is that correct?

A. I said her cooperation would be made known to Missouri authorities, that this statement would go out there, and I believe I told her her biggest problem at that time was whether or not she was

---

3. "The burden of proof as to the voluntariness, once the confession is challenged, is upon the state." *State v. Mitchell,* 611 S.W.2d 211, 213[3] (Mo. banc 1981).

4. The front of the card reads:
    "POLICE DEPARTMENT CITY OF NEW-
        BURGH, N.Y.
        WARNING

I am a *Police Officer.* I warn you that anything you say will be used in a Court of law against you; That you have an absolute right to remain silent; That you have the right to advice of a lawyer *before* and the presence of a lawyer here with you *during* questioning, and
That if you cannot afford a lawyer, one will be appointed for you free before any questioning if you desire.
    Signature /s/ Mildred Simon"

going to be tried as an adult or a juvenile in the State of Missouri, but I had no jurisdiction over that.

Q. *O.K. So you didn't specifically say to her: "This statement will be used in a criminal court as opposed to a juvenile court," did you?*

A. *It was going to be used in the State of Missouri—given to the authorities in the State of Missouri where she was wanted for the crime of murder.*

Q. *My question was: You didn't specifically say that this would be used in a criminal court as opposed to a juvenile court, did you?*

A. *No, not those words, no.*

Q. *Did you hear anyone tell her that this statement would be used against her in a criminal court in the State of Missouri?*

A. *Not in my presence, no.*

Q. *And your statement to her was that she could be tried in either a juvenile court or a criminal court, is that correct?*

A. *No.* I said her biggest concern at that time, meaning September 3, 1982, *when I was taking this statement,* was whether or not she was going to be tried as an adult or a juvenile. That was her biggest concern.

Q. Why did you tell her that was her biggest concern?

A. Because if she's tried as a juvenile and found guilty, the time is not that great, whereas an adult, it's a considerable amount of time to be served if found guilty.

■ Defendant's motion to suppress challenged the admissibility of the statement on several grounds, including ground (a) and those portions of ground (b) which alleged a violation of § 211.061. Those objections were renewed when Exhibit 58 was offered into evidence at the trial and in the motion for new trial. Accordingly they have been preserved for appellate review.

However, the objections based upon alleged violations of the four Juvenile Court Rules were made for the first time on appeal and thus have not been preserved for appellate review. *State v. Jackson,* 635 S.W.2d 495, 496[2, 3] (Mo.App.1982). Rule 29.11(d). The latter objections may be considered only if they constitute plain errors affecting substantial rights. Rule 30.20.

■ Missouri cases based upon § 211.061 hold that a statement of the juvenile to police, in response to police questioning at a time when the police have failed to deliver the juvenile to the juvenile authorities as required by § 211.061, may not be used against the juvenile in criminal proceedings. *State v. Larson,* 623 S.W.2d 69, 71 (Mo.App.1981); *Hamby v. State,* 454 S.W.2d 894, 896–897[1] (Mo. banc 1970); *State v. Arbeiter,* 408 S.W.2d 26, 30[3] (Mo.1966). As stated in *Larson,* a child taken into custody "must be accorded all of the rights to which he would be entitled if he were an adult, including full advice as to his constitutional rights in compliance with the *Miranda* decision."[5] 623 S.W.2d at 71–72.

Sec. 211.131 provides, as applicable here, that when any child found violating any law is taken into custody, the taking into custody is not considered an arrest, the parent of the child shall be notified as soon as possible, and the jurisdiction of the court attaches from the time the child is taken into custody.

It should be observed that defendant's point makes no mention of § 211.271(3) which reads, in pertinent part: "After a child is taken into custody as provided in § 211.131, all admissions, confessions, and statements by the child *to the juvenile officer and juvenile court personnel ...* are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under [Chapter 211]." (Emphasis added.)

It has been said that the purpose of § 211.271(3) is to encourage discussion be-

---

5. See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.  1602, 16 L.Ed.2d 694 (1966).

tween the juvenile and the juvenile officer in a relaxed, non-adversary and confidential setting. *State v. Jones*, 571 S.W.2d 741, 744 (Mo.App.1978); *State v. Ross*, 516 S.W.2d 311, 320 (Mo.App.1974). If the Missouri juvenile officer *participates* in the interrogation, "such participation in and of itself violates § 211.271(3) and renders the confession inadmissible." *State v. Tolliver*, 561 S.W.2d 407, 412 (Mo.App.1978); *State v. Kemper*, 535 S.W.2d 241, 254[16] (Mo.App.1976).

In *State v. Wright*, 515 S.W.2d 421 (Mo. banc 1974), a juvenile murder suspect, while in juvenile custody, was questioned by the police at the juvenile court in the presence of his mother and the deputy juvenile officer. The juvenile officer informed the defendant of his constitutional rights and advised him that because of his previous juvenile record he would probably be tried as an adult and that he might receive the death sentence. Thereafter, under interrogation by police officers, the defendant gave a confession which was used in his criminal trial. The supreme court rejected the contention that the statement was made to a juvenile officer within the meaning of § 211.271(3). The court said, at p. 430:

"The mere presence of the juvenile officer to warn the youth of his rights and to make sure that they were accorded to him, when all the facts and circumstances are considered, did not make the confession to the police officer a statement to the juvenile officer."

The court stated the applicable rule to be " * * * that if, after he has been granted his federal constitutional Fifth and Sixth Amendment rights, a juvenile subject to jurisdiction of the juvenile court makes a voluntary statement to someone other than a juvenile officer or other juvenile court personnel, and *if it is made clear to the juvenile that criminal responsibility can result from any statement he makes* and that the questioning authorities are operating as his adversaries rather than his friends, such statements are admissible in evidence against the juvenile in a criminal trial." (Emphasis added.)

In *In Interest of A.D.R.*, 515 S.W.2d 438 (Mo. banc 1974), police interrogated a juvenile in the presence of a juvenile officer and a confession was obtained. The court held that § 211.271(3) was no bar to the admissibility of the confession in the criminal trial. The court noted that prior to the interrogation defendant was given a *Miranda* warning which included information that any statement given could be used against him in court. The court also said:

"A deputy juvenile officer was present as an observer during all of the interrogation. Defendant was interrogated in an adversary situation by a person he knew to be a police officer and the statement made was to that officer, not to the bystander juvenile officer. Defendant makes no complaint that there was any coercion or any mistreatment. In the hearing on the admissibility of the confession, he stated that his confession was voluntary. In that testimony he recognized that anything he said could be used against him in any subsequent proceedings in court. We conclude and hold that defendant's confession was admissible under the rule announced in *Wright*." 515 S.W.2d at 441.

■ Of course when a juvenile is tried as an adult a statement given by him to the juvenile officer himself is not admissible under the plain language of § 211.271(3). *State v. Ross*, supra, 516 S.W.2d at 319; In Interest of A.D.R., supra, 515 S.W.2d at 440–441.

Several cases have considered the issue of the adequacy of a warning to a juvenile with respect to the possible use of his confession in a criminal trial, as distinguished from a juvenile proceeding. Those cases include *State v. Wright*, supra, 515 S.W.2d 421 (Mo. banc 1974); *In Interest of A.D.R.*, supra, 515 S.W.2d 438 (Mo. banc 1974); *State v. McMillian*, 514 S.W.2d 528 (Mo. banc 1974); and *State v. Ross*, supra, 516 S.W.2d 311 (Mo.App.1974), all antedating Juvenile Rule 122.05 which became effective January 1, 1982.

In none of the four cases was the juvenile *expressly* warned that his confession could be used against him if he were tried as an adult. In *Wright* and in *A.D.R.* the confessions were held to be admissible in the criminal trial. In both of those cases the juvenile was given the *Miranda* warnings. In *Wright* he was also informed that due to his past record he "possibly would be certified for trial as an adult" and that in an adult trial there was a possibility of a death sentence. In *A.D.R.* the supreme court said that it was desirable to give the juvenile an express warning that his statement might be used in the criminal proceeding but that awareness of potential criminal responsibility may often be imputed to a juvenile when the police are conducting the entire investigation.

In *McMillian* the defendant was given the *Miranda* warnings and was told what punishment the juvenile court could impose, but he was not informed, nor was it shown that he understood, that he could be tried as an adult. There was no evidence indicating defendant was aware of his potential criminal responsibility and the mere fact that defendant knew his interrogator was a police officer did not show such an awareness. The confession was held inadmissible.

In *Ross*, which arose out of the same incident as *McMillian*, the juvenile was questioned by both the police officer and one of the juvenile officers, a fact itself which rendered the admissions inadmissible because of the juvenile officer's participation. See *State v. Tolliver* and *State v. Kemper*, supra. Although the juvenile officer advised Ross of his constitutional rights, it was not made clear to Ross or his mother that criminal responsibility might result and the court could not conclude that Ross realized his potential criminal responsibility although he knew one interrogator was a policeman. The court rejected the defendant's contention that an express warning was necessary but stated that the totality of circumstances must be examined to determine the juvenile's awareness of the potential results of his statement.

It should be noted that the *Miranda* warnings given in *McMillian* and the advice of "his constitutional rights," given in *Ross*, were not per se sufficient to make the warning adequate.

Juvenile Rule 122.05, adopted nine months prior to defendant's interrogation in New York, makes it the duty of the juvenile officer to advise the juvenile of his constitutional rights and, significantly, the juvenile officer is required to inform the juvenile that "whatever he says to the police" may be used against him in the event he is prosecuted as an adult. Although the Juvenile Rules govern the practice and procedure "in the juvenile courts under §§ 211.011 through 211.431 RSMo," Rule 110.01, the latter mandate of Rule 122.05, would serve no purpose, and its intended protection of the juvenile would be thwarted, if a statement, procured in the absence of the express warning, were held to be admissible in a criminal trial based merely on an examination of "the totality of circumstances."

It seems clear that if the interrogation of defendant had been conducted in Missouri, if the confession had been given to a police officer in the presence of the juvenile officer, and if the juvenile officer had previously failed to impart the express warning of Rule 122.05, the confession would have been inadmissible in a criminal proceeding. Is that result altered by the fact that this interrogation took place in New York rather than in Missouri? For the reasons that follow, this court holds that it is not.

Remarkably neither side cites, nor has the independent research of this court found, a case, in this or any other state, dealing with the admissibility of a juvenile's confession in a criminal trial where the confession has been obtained by out-state authorities. The state's brief asserts, and defendant does not contend otherwise, that the interrogation in New York which produced state's Exhibit 58 was consistent with New York statutes pertaining to juvenile procedure. For the purpose of this opinion this court assumes that the assertion is valid.

Missouri is a signatory to the Interstate Compact on Juveniles. § 210.570 to § 210.-610. New York is a party to the interstate compact. Sec. 210.610.2 provides, in pertinent part: "All provisions and procedures of art. V and art. VI of § 210.570 shall be construed to apply to any juvenile charged with being a delinquent by reason of violating any criminal law which constitutes a felony. Any juvenile charged with being a delinquent by reason of violating any criminal law which constitutes a felony shall be returned to the requesting state upon a requisition to the state where the juvenile may be found...." There is no provision in § 210.610.2 or in art. V and art. VI of § 210.570 which deals with the taking of a statement from the juvenile by the authorities in the state to which a requisition for the juvenile's return is directed.

■ Generally, the law of the forum governs the admissibility of evidence. 22A C.J.S.Crim.Law § 530(2), p. 234. With regard to admissibility of an adult confession obtained by out-state authorities, at least two cases hold that the issue of admissibility is controlled by the law of the forum. *State v. Lorain*, 141 Conn. 694, 109 A.2d 504 (1954); *Moore v. People*, 164 Colo. 222, 434 P.2d 132 (banc 1967).

In *Lorain* the defendant in a Connecticut criminal case made a confession in Rhode Island. At p. 507 the court said:

"Regarding the claim that the law of Rhode Island and not that of Connecticut controls the question whether the first statement by the defendant was free and voluntary, it does not appear that there is any difference in the law of the two states on the point involved. However, it is the rule that the admissibility of evidence relates to judicial procedure and is determined by the law of the forum. *Fisk's Appeal*, 81 Conn. 433, 436, 71 A. 559; 31 C.J.S., Evidence, § 5, page 509; 1 Wigmore, Evidence (3d Ed.) p. 159, § 5."

In *Moore* a defendant in a Colorado criminal case made an oral confession in Texas. Under Texas law, at that time, an oral confession was not admissible. Under Colorado law a confession otherwise admissi-

ble was not inadmissible simply because it was oral. Citing *Lorain*, the court held the Texas confession admissible in the Colorado court. The court said it was dealing with an evidentiary matter and that the law of the forum prevailed. The court also cited *Young v. United States*, 107 F.2d 490 (5th Cir.1939), where it was held that a Texas statute regarding oral confessions did not apply to a criminal case in a United States District Court sitting in Texas. 434 P.2d at 136.

It is true that the foregoing authorities involved instances where the confession would have been admissible if taken in the state of the forum and that fact was deemed controlling. In the instant case, as has been demonstrated, if the confession, absent the express warning, had been given in Missouri it would not have been admissible in view of the policy expressed in the mandate of Juvenile Rule 122.05.

There are federal cases holding that *Miranda* warnings are not essential to the validity and admissibility of a confession which the defendant has given to police in a foreign country. *United States v. Nolan*, 551 F.2d 266, 273[12] (10th Cir.1977); *United States v. Mundt*, 508 F.2d 904, 906 (10th Cir.1974); *United States v. Chavarria*, 443 F.2d 904, 905 (9th Cir.1971). The rationale for that rule, as stated in *Chavarria*, is that *Miranda* was intended as a deterrent to unlawful police interrogations. When the interrogation is by the authorities of a foreign jurisdiction, the exclusionary rule has little or no effect upon the conduct of foreign police. Therefore, so long as the trustworthiness of the confession satisfies legal standards, the fact that the defendant was not given *Miranda* warnings before questioning by foreign police will not, by itself, render his confession inadmissible.

On the other hand, if the New York authorities in the case at bar had failed to give defendant the *Miranda* warnings, that failure would have tainted the confession and rendered it inadmissible in the Missouri proceeding.

In civil cases, involving the somewhat analogous area of privilege, it has been

held that where the courts of the forum recognize the privilege, a communication is inadmissible although the communication took place in a state where the privilege is not recognized. *Hare v. Family Publications Service, Inc.,* 334 F.Supp. 953 (1971); *Wexler v. Metropolitan Life Ins. Co.,* 38 N.Y.S.2d 889 (1942); *Lorde v. Guardian Life Ins. Co. of America,* 252 A.D.2d 646, 300 N.Y.S. 721 (1937).

In *Hare* a United States District Court sitting in Maryland held that a statement made by a client to an accountant in New York was not admissible because of the Maryland statute creating the accountant-client privilege. New York did not recognize such a privilege. The court mentioned the "strong public policy" underlying the Maryland statute. Similarly in *Wexler* and in *Lorde* a New York statute creating a physician-patient privilege barred testimony imparted by a patient to a physician in New Hampshire (*Wexler*) and in Pennsylvania (*Lorde*), although neither New Hampshire nor Pennsylvania recognized such privilege.

In *Brooks v. Engle,* 207 N.W.2d 110 (Iowa 1973), in a widow's dram shop action in Iowa under Iowa statutes to recover for the drowning death of her husband on the Illinois side of the Mississippi River after consuming alcoholic beverages, the law of Iowa rather than Illinois was applicable in determining the admissibility of evidence of a blood alcohol test performed in Illinois on blood withdrawn by a mortician in Illinois.

When a juvenile is taken into custody on suspicion of an offense which could result in his being prosecuted as an adult, he has a constitutional right to the *Miranda* warnings. He is also entitled to the warnings enumerated in Juvenile Rule 122.05 prior to in-custody interrogation. The rule places a duty upon the juvenile officer to inform the juvenile, among other things, that whatever he says to the police may be used against him in the event he is prosecuted as an adult. Whether or not that duty could

have been delegated to the New York authorities need not be decided for the reason that it was not performed.

The importance of the warning is underlined by two facts. First, the juvenile's exposure to alternate systems of justice, the criminal court system and the juvenile court system, makes his bundle of rights more difficult to explain than those of an adult. Secondly, the fact that the recipient of the explanation is a juvenile should be considered in determining the efficacy of the explanation.

■ Defendant, prior to the giving of her statement, was not warned, by the New York juvenile officer or anyone else, that her statement could be used against her in a criminal trial. Her consent to give the statement was not a knowing and intelligent waiver of her rights. This is not a question of giving the Missouri juvenile procedure, including Rule 122.05, extra-territorial effect. It is a matter of enforcing the forum's policy with regard to the admissibility of a juvenile's confession.

This court holds that the failure of the defendant to be informed, prior to her in-custody interrogation, that what she would say to Sgt. Ginquitti could be used against her in the event she was prosecuted as an adult, contrary to the mandate of Rule 122.05, rendered state's Exhibit 58 inadmissible and the trial court committed plain error in overruling defendant's motion to suppress it.

The defendant testified at the criminal trial and her testimony was, at least in some respects, similar to portions of Exhibit 58. The state does not argue, however, that the admission of the exhibit, if error, was harmless error beyond a reasonable doubt [6] and the record would not support such an argument.

Defendant does not argue that the evidence, exclusive of Exhibit 58, is insufficient to support the verdict and the only relief she requests is reversal and remand. Moreover, "[w]hen the trial court errone-

---

**6.** See *Commonwealth v. Bridges,* 381 A.2d 125 (Pa.1977), where the six-judge court divided 3–3 on the issue of whether the admission into evidence of a juvenile's confession, taken in viola-

tion of juvenile procedure, was harmless error beyond a reasonable doubt because the juvenile testified on his own behalf and reiterated facts set forth in the challenged statement. Three

ously admits evidence resulting in reversal, ... the State should not be precluded from retrial even though when such evidence is discounted there may be evidentiary insufficiency." *State v. Wood,* 596 S.W.2d 394, 398[3] (Mo. banc 1980).

Defendant's complaint that the trial court improperly restricted defense counsel's voir dire examination of the veniremen is invalid and does not merit discussion. Alleged instruction errors need not be considered or discussed because they may not arise on retrial. Defendant's contention that the trial court erred in failing to remand the cause to the juvenile court of Greene County, and that the latter tribunal improperly ordered the petition dismissed to permit defendant to be prosecuted under the general law, is not supported by the record.

The judgment is reversed and the cause remanded.

TITUS, P.J., and GREENE, J., concur.

judges held that the error was harmless beyond a reasonable doubt. Three judges disagreed with that holding but one of them concurred in the result because the issue had not been preserved for appellate review.

At least in some circumstances the admission of an adult's confession may be harmless error. See *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972).