**STATE of Missouri, Plaintiff-Respondent,**

v.

**Jerry Lee McMILLIAN, Defendant-Appellant.**

**No. 58610.**

Supreme Court of Missouri, En Banc.

Oct. 14, 1974.

John C. Danforth, Atty. Gen., Mark D. Mittleman, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Donald L. Schlapprizzi, St. Louis, for defendant-appellant.

HENLEY, Judge.

Jerry Lee McMillian (defendant), charged by indictment with murder, second degree, of Richard Johnson on October 31, 1971, was tried by a jury, found guilty of manslaughter, and his punishment assessed at imprisonment for 10 years. From the judgment sentencing him in accordance with this verdict, he appealed to the Missouri Court of Appeals, St. Louis District. On recommendation of that court we ordered the case transferred here before opinion pursuant to Mo. Const. Art. V, § 10, V.A.M.S., so that it might be heard at the same session and considered with State v. Rone, 515 S.W.2d 438 (Mo.banc 1974), and State v. Wright, 515 S.W.2d 421 (Mo.banc 1974), both of which were then pending in this court. All three cases are decided today.

The questions presented are (1) whether § 211.271(3),[1] a part of the juvenile code, is a bar to the use in a criminal prosecution under the general law of any statement, admission or confession made by the defendant while subject to the jurisdiction of the juvenile court, and (2) whether de-

---

1. Statutory references are to RSMo 1969 and V.A.M.S.

fendant was adequately warned of his constitutional rights.

The first question is considered at length in State v. Wright, supra, and we held, inter alia, that the statute is not an absolute and complete bar to the use in a criminal trial under the general law of a statement, admission or confession made by a juvenile while subject to the jurisdiction of the juvenile court, unless the statement is in fact made to a juvenile officer or other juvenile court personnel. The rule adopted in that case (515 S.W.2d at 430) is that "* * * if, after he has been granted his federal constitutional Fifth and Sixth Amendment rights, a juvenile subject to jurisdiction of the juvenile court makes a voluntary statement to someone other than a juvenile officer or other juvenile court personnel, and if it is made clear to the juvenile that criminal responsibility can result from any statement he makes and that the questioning authorities are operating as his adversaries rather than his friends, such statements are admissible in evidence against the juvenile in a criminal trial."

As to the second question, defendant contends that the warning given him of his constitutional rights was inadequate in these particular respects: he was not told he could be certified for trial and prosecuted as an adult under the general law, and that any statement he made could be used against him in that trial.

The evidence is that between 7:30 and 8:00 o'clock on Halloween evening, 1971, defendant, then age 15, and two other juveniles, one armed with a .22 caliber revolver, decided that under the guise of "trick or treating" they would rob a "dude." They went to the home of Richard Johnson at 2851 St. Vincent street in St. Louis. Mr. and Mrs. Johnson were in their living room near the front door and the television set, spending more time that evening answering with candy the "trick or treating" of the happy children than watching their favorite television program. When defendant and his two friends arrived at the Johnson door, one of them announced that it was a "trick or treat," and Mr. Johnson met them with candy. As the candy was being accepted, the armed juvenile pointed the pistol at Mr. Johnson, saying it was a robbery instead. Mr. Johnson grabbed the gun and in the ensuing scuffle was shot in the head, and received a wound from which he died on December 5, 1971. The three juveniles ran from the scene.

Defendant was apprehended by police officers the next day and immediately taken direct to the Juvenile Detention Center. The following day, November 2, 1971, a police officer took a statement from him in a hearing room at the Center. The statement was recorded on tape. Present during the taking of this statement, in addition to defendant, were: his mother; Officer Bob Hawkins and Detective Daniel Stewart of the St. Louis Metropolitan Police Department; Joseph Ledgerwood, deputy juvenile officer; and Ed Steinman, assistant legal officer of the juvenile court.

Prior to entering the hearing room, Mr. Ledgerwood read defendant a Miranda warning.[2] After they were seated in the hearing room, Mr. Steinman stated for the record the names of the persons present and their interest in defendant. He then took a copy of a printed Miranda warning and went over it with Jerry and his mother, explaining in detail his constitutional rights. Both said they understood these rights and that Jerry wanted to make a statement. At this point, Officer Stewart began to question defendant and his mother, and in response defendant made a statement, the substance of which is the basis for most of the above narrative of the evidence.

In explaining the Fifth and Sixth Amendment rights, Mr. Steinman told Jerry and his mother, inter alia, that "the charge is Assault With Intent to Kill

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

* * *, with shooting a man on Halloween evening, that's what this charge is, and * * * [Jerry] doesn't have to make any statement if he doesn't want to, * * * [b]ut any statement that he does [make] may be used against him. * * *. That is [,] if the Juvenile Court finds that he is guilty of shooting the man the court could, among other things, it could send him to a correctional school, it could put him in a institution public or private, it could place him with another person, another guardian so that he wouldn't live with you, or they could put him on probation, which means that he wouldn't be committed to an institution but he would still live with you, * * * ."

There is nothing in this explanation of his rights from which it may be said that defendant and his mother should have understood that he had been charged with a criminal offense under the general law and would be tried in another court (as a matter of fact he was not so charged until approximately one month later), or that they realized that criminal prosecution could result from any statement he would make, that he could be certified for trial as an adult and tried in circuit court under the general law, and that any statement he made would be usable against him in that trial. The explanation is limited to what the juvenile court could do with him based on charges in juvenile court.

A few months before trial date defendant filed a motion to suppress his tape-recorded statement and all evidence thereof. After an evidentiary hearing, at which both Officers Stewart and Hawkins testified, the motion was overruled.

On the morning of November 27, 1972, the day this case had been set for trial, defendant filed what he denominated as his "Renewed Motion to Suppress," seeking essentially the same relief and alleging the same grounds as in the first motion. A hearing on this motion was held that day, after the jury had been excused until the next morning. The evidence heard consisted of (1) testimony of Joseph Ledgerwood, assistant juvenile officer; (2) a transcript of evidence presented on the first motion to suppress, including testimony of Officers Stewart and Hawkins; (3) additional testimony of those officers; (4) a copy of the printed Miranda warning read and explained to defendant and his mother on November 2, 1971; and (5) the taped recording of defendant's statement made at the juvenile center.

At the close of the hearing, the court ruled that the statement was voluntary and admissible. It was later received in evidence at the trial and the taped recording heard by the jury.

In ruling on the motion, the court made rather extensive findings and conclusions. In particular, the trial judge found unbelievable the testimony of Officers Stewart, Hawkins and Ledgerwood that defendant and his mother were advised that defendant could be certified for trial as an adult and prosecuted under the general law. Explaining his reasons for this ruling in the light of this particular finding, the judge stated that as he understood State v. Sinderson, 455 S.W.2d 486 (Mo.1970), it does not require "that the defendant be advised of possible certification and trial as an adult."

The sense and force of what the courts held in Sinderson, supra, and State v. Gullings, 244 Or. 173, 416 P.2d 311, 313 (1966) is that the juvenile's potential criminal responsibility be made clear so that he will "realize," be "aware" of the possible result of any statement he makes. How this realization or awareness is produced and whether it is demonstrated must depend on the facts and circumstances of each case. The court did not in Sinderson, supra, require that the juvenile be "advised" of his potential criminal responsibility in the sense that it be "stated" to him that he could be certified for trial and tried as an adult.

In State v. Rone, supra (515 S.W.2d at 441), we quoted with approval a statement

in State v. Loyd, 297 Minn. 442, 212 N.W. 2d 671, 673 (1973) which recognized the desirability of specifically stating to the juvenile that he could be certified for trial and prosecuted as an adult under the general law, and that any statement he made would be usable against him in such trial. But we did not *require* that this be stated to the juvenile; we merely recognized it as one method, and probably the safest, of assuring that the juvenile realizes that criminal responsibility may result from his statement.

We cannot, on this record, conclude that defendant or his mother realized his potential criminal responsibility when he made this statement. Basically, the warning given him was limited to what the juvenile court could do if he made a statement. The trial court found unbelievable the testimony of officers who said they had advised defendant he could be certified for trial as an adult and prosecuted under the general law, and we do not consider that determination clearly erroneous. There is no evidence which otherwise would demonstrate or point toward realization or awareness by defendant of his potential criminal responsibility. In State v. Loyd, supra, quoted and approved in State v. Rone, supra, (515 S.W.2d at 441) the court said that "[a]wareness of potential criminal responsibility may often be imputed to a juvenile when the police are conducting the interrogation." There is evidence in this case indicating defendant could have known at the time he made the statement that Officers Stewart and Hawkins were policemen. However, assuming for the purpose of this decision that he did know them to be police officers, an awareness of his potential criminal responsibility may not be ascribed to him from this knowledge where, as here, the warning given him by the juvenile court officer was limited explicitly to what the juvenile court could do with him.

Defendant's statement given to the police at the juvenile center and other evidence of his confession were not admissible in evidence, and for error in receiving this evidence the judgment must be reversed and the cause remanded.

Two other points briefed by defendant, but not ruled upon, involve alleged error (1) in denying defendant's offer of the indictment charging with this murder another juvenile who, according to the evidence, fired the shot which killed Mr. Johnson; and (2) in refusing to declare a mistrial because of rebuttal argument by state's counsel. The possibility that these questions would arise again in the same context in another trial of this case is very remote, and ruling on them would serve no useful purpose.

The judgment is reversed and the cause remanded.

MORGAN, HOLMAN and FINCH, JJ., concur.

DONNELLY, C. J., concurs in result.

SEILER, J., concurs in part and dissents in part in separate opinion filed.

BARDGETT, J., concurs in part and dissents in part and concurs in separate opinion of SEILER, J.

SEILER, Judge (concurring in part and dissenting in part).

I concur in the result reached in this case and agree that the warning given the juvenile was inadequate for the reasons set forth in the main opinion, as well as for the reason that the juvenile was not informed that under Sec. 211.271(3) he was at liberty to make a confession to the juvenile officer which could not be used against him except in juvenile proceedings. The legislature has so provided and we should not begrudge the juvenile his right to be advised of this important right.

However, I dissent with respect to the views expressed that Sec. 211.271(3) operates to make confessions obtained by the police while the child is in juvenile custody

admissible in subsequent criminal proceedings, for the reasons set forth in my dissent in State v. Wright, Mo., 515 S.W.2d 421, handed down this same date. ·

I also dissent from the view that the juvenile need not be warned specifically that he can be certified for trial and prosecuted as an adult under the general law, and that any statements he makes (except, of course, statements to the juvenile authorities) would be admissible against him in such a trial. In my opinion, this warning is required, not merely "desirable". Our failure to say so plainly invites attempts to comply in form but not in substance.