**STATE of Missouri, Respondent,**

v.

**Charles Leon TOLLIVER, Appellant.**

**No. KCD 29034.**

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1977.

Motion for Rehearing and/or Transfer
Denied Jan. 30, 1978.

Application to Transfer Denied
March 13, 1978.

Joe Hamilton Scott, Public Defender, St. Joseph, for appellant.

John D. Ashcroft, Atty. Gen., Frank Murphy, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WASSERSTROM and SOMERVILLE, JJ.

WASSERSTROM, Judge.

Defendant appeals his conviction by a jury of robbery in the first degree. At the time of the offense charged, defendant was 15 years of age.

The evidence shows that at about 10:30 p. m. on January 2, 1976, defendant assaulted Ted Williams and took from him a ring, a watch and a gun. The next evening defendant was arrested. The arresting officers called into police headquarters for a juvenile officer to be on hand to take custody of defendant. Juvenile officers Wood and Fridell were at the police station at the time, and they received a call from the front desk to wait until defendant was brought in. The arresting officers did arrive at sometime between 7:15 and 7:40 and delivered defendant manacled to Wood and Fridell.

The juvenile officers immediately took defendant to the assembly room in the police station where they removed the handcuffs and proceeded to search defendant and pat him down for weapons. They proceeded to read him a *Miranda* warning and explain it to him. They then took information from defendant sufficient to fill out a "juvenile sheet." Part of the information so taken was the telephone number of defendant's mother, whom the juvenile officers then called. The party answering identified herself as defendant's mother and said she would come to the police station. When she did not arrive, a second call was placed 10 or 15 minutes later. When she still did not arrive at the police station, a third call was placed 15 to 20 minutes after the second call. In the meantime, the juvenile officers gave defendant a certain amount of "orientation" which consisted of telling him "what things are all about, that he is in the police station, he is in the conference room, that there may be a policeman talking to him, that we are juvenile officers."

By 8:30 p. m. the mother had still not arrived, and the juvenile officers then announced to Detective Thomas that he was free to take defendant's statement and they requested Thomas to do so. The juvenile officers introduced Thomas to defendant as a policeman and stated to the defendant that Thomas was there in a different capacity than they were. Thomas then proceeded to give an additional *Miranda* warning and proceeded to take a statement from defendant. The statement constituted a full confession, and at the same time defendant turned over the ring and watch which he had taken from Williams. He also disclosed where he had thrown the gun and he took Thomas, Wood and Fridell to that place on Messanie Street.

Defendant assigns eight points of error on appeal, but we reverse solely on the proposition that the statement taken from defendant occurred under circumstances which violated his constitutional rights. This determination makes it unnecessary to pass upon the other unrelated points argued on this appeal.

The crucial issue as to the validity of defendant's waiver of his constitutional rights under the appropriate standards was not squarely raised by defendant in his motion for new trial nor is it so raised in his Points Relied Upon. His Points Nos. IV and V do, however, come close. His Point IV does set forth some of the appropriate

factors, but this Point directs its attack at compliance with the Juvenile Code rather than to compliance with constitutional guarantees. Defendant's Point V directs itself to violation of constitutional protection, but this point specifies incorrect reasons. Giving these Points a liberal interpretation, Points IV and V in combination can be construed as adequately presenting the issue upon which this opinion is based. In any event, even if for technical reasons the issue has not been perfectly raised, consideration is nevertheless proper under the plain error doctrine set forth in Rule 27.-20(c).

The starting point for discussion of this constitutional issue is the consideration stated in *Haley v. State of Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), where the United States Supreme Court pointed out that "[a]ge 15 is a tender and difficult age for a boy of any race. He cannot be judged by the more exacting standards of maturity. That which would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens. This is the period of great instability which the crisis of adolescence produces." In light of that consideration, the law required special protection to a young teenager who is to be subjected to police interrogation, so as to place him so far as possible on a plane of equivalence with an adult. A key measure of such protection has been the creation of a procedure to provide the presence of an attorney, parent or similar adult friend. The reason for this standard of protection was set forth in *Gallegos v. State of Colorado,* 370 U.S. 49, l. c. 54–55, 82 S.Ct. 1209, 1212–1213, 8 L.Ed.2d 325 (1962):

"He [the juvenile] cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions. He would have no way of knowing what the consequences of his confession were without advice as to his rights—from someone concerned with securing him those rights—and without the aid of more mature judgment as to the steps he should take in the predicament in which he found himself. A lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not. Adult advice would have put him on a less unequal footing with his interrogators. Without some adult protection against this inequality, a 14-year-old boy would not be able to know, let alone assert, such constitutional rights as he had. To allow this conviction to stand would, in effect, be to treat him as if he had no constitutional rights."

The failure in *Gallegos* to provide such adult support to the juvenile was there held, along with other factors, to show a deprivation of constitutional protection under the "totality of circumstances."

■ The State urges in the present case that the two juvenile officers should be considered as defendant's "adult friends" within the foregoing rule. That contention cannot be accepted, at least under the facts of this case. Juvenile officers Wood and Fridell considered themselves to have only a very limited duty, confined largely to explaining the *Miranda* warning, notifying a parent, and preventing any open and obvious improper treatment of the juvenile by the police. In actuality that is essentially all that the juvenile officers did here. They merely made an academic explanation of defendant's rights without any attempt to relate those rights to the facts of defendant's case. Indeed, the only information which those two juvenile officers took from defendant was the bare information necessary to complete the juvenile record. They made no inquiry at all as to the facts of the alleged criminal activity for which the defendant had been arrested, and without this information they could not possibly give defendant any meaningful advice or the type of concerned help contemplated by *Gallegos.*

Neither of these men had even had any previous acquaintanceship with this young boy; and from the face of the record, they made no serious attempt to establish any meaningful friendly relationship with him. Had they done so, they would almost surely have found out that defendant had not

lived with his mother since the time he was six months old, but instead lived with his grandmother. If the juvenile officers had made this kind of minimum friendly inquiry, they surely would have placed a call to the grandmother when the mother failed to appear. In any event, they cannot in any realistic sense be considered an adequate substitute for the parent in light of what they did and failed to do. Their conduct, limited to rather stiff formalities, would have sufficed if they were there simply in addition to a parent or similar adult friend—but under the facts shown by this record that type of conduct does not match up to the necessary protection when they were the only ones present to whom defendant could look for supportive help. All of this must also be evaluated in light of the fact that the juvenile officers took custody of defendant at the police station and never made any move to take him to the courthouse where they had their offices. They took him immediately to the police assembly room where he remained throughout until after his confession. The physical location in which the juvenile officers conducted this whole operation together with the fact that they conducted a search and pat down of defendant's body, were hardly calculated to create a sense of confidence in defendant that he was in the hands of friends.

This protection of having a parent or some similar adult friend present at an interrogation has been regarded as so necessary that its absence makes any resulting statement illegal per se. *Lewis v. State,* 259 Ind. 431, 288 N.E.2d 138 (1972). Generally, however, the case law does not go so far. The presence of an attorney, parent or adult friend is regarded by most courts as just one of the factors going to make up the "totality of circumstances." *Gallegos v. State of Colorado, supra; State v. Sinderson,* 455 S.W.2d 486 (Mo.1970); *In Re K.W.B.,* 500 S.W.2d 275 (Mo.App.1973); *People v. Lara,* 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202 (banc 1967); *State v. Hogan,* 297 Minn. 430, 212 N.W.2d 664, 671, note 2 (1973); *Interest of Stiff,* 32 Ill. App.3d 971, 336 N.E.2d 619 (1975). Never-

theless, this protection is of great importance as affecting the totality of all the circumstances involved. *In Re K.W.B., supra; Application of Gault,* 387 U.S. 1, l. c. 55, 87 S.Ct. 1424, 18 L.Ed.2d 527 (1967). See case note in 44 U.M.K.C.Law Rev. 87, l. c. 93, note 32 (1975).

■ Addressing the totality of the circumstances in the present case, the failure to have a parent or adult friend present at the interrogation does not stand alone. In considering this whole situation, it is important to note that there was nothing of an exigent nature. The police were not in hot pursuit on a criminal trail—the crime had occurred almost 24 hours before the arrest. Furthermore, there was no one else implicated in the robbery of Williams—this is made clear by Williams' testimony in open court as well as the confession given by defendant. Still further, the police were not asking for any immediate action—it was the juvenile officers who requested Detective Thomas to take defendant's statement, without any request from any member of the police to either Wood or Fridell. If there had existed an emergency situation, much could be excused. By like token, when no emergency exists, more meticulous care is called for. There was no reason why the juvenile officers should not have taken more time and made more of an effort to obtain the presence of a parent, adult friend or a lawyer. As already discussed, just a little more effort would have disclosed that defendant's grandmother had a closer relationship to defendant than did his mother and would be more likely to come to his aid than his mother.

■ There is something additional which is even more damaging. The testimony by these juvenile officers tends very strongly to show that they participated along with Thomas in the interrogation of defendant. Thus in the redirect examination of Wood by the Prosecuting Attorney, the following question was asked and answer given:

"Q After Mr. Tolliver made his statement that you saw him sign that you signed, did *you* ask him where the

items that he said that he took from Mr. Williams were?

"A I don't believe it was after. I believe it was during the time." (emphasis added)

Perhaps this piece of testimony can be explained away on the theory that the word "you" as used by the prosecutor was meant or understood to be meant in the plural, and so to refer to all three of the men present at the interrogation. However that innocuous explanation cannot hold true as to the following testimony given by juvenile officer Fridell:

"Q Where did he tell you the derringer was?

"A He tole [sic] *me* the derringer was on Messanie Street at a location where he could show us." (emphasis added)

The only fair understanding which can be gained from this testimony is that one or both of the juvenile officers did participate in the interrogation. Such participation in and of itself violates Sec. 211.271(3) RSMo 1969 and renders the confession inadmissible. *State v. Kemper*, 535 S.W.2d 241, l. c. 254 (Mo.App.1976); cf. *State v. Wright*, 515 S.W.2d 421 (Mo. banc 1974) and *In Interest of A.D.R.*, 515 S.W.2d 438, l. c. 441 (Mo. banc 1974). Not only did the participation of the juvenile officers violate the statutory provision, but additionally such active participation creates a due process problem stemming from a conflict of interest. A juvenile officer can hardly perform faithfully his function of gaining the juvenile's confidence and aiding in starting the rehabilitation which is the underlying philosophical purpose of the Juvenile Court, if he at the same time undertakes an active role in police enforcement of the criminal law.

The statement taken from defendant and also the ring, watch and gun which were recovered as a result of obtaining that statement were improperly admitted into evidence. The judgment of conviction is therefore reversed and this case is remanded for a new trial.

All concur.