STATE of Missouri, Plaintiff-Respondent,

v.

Andrew Leon JONES, Defendant-Appellant.

No. 48041.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 15, 1985.

Henry Robertson, St. Louis, for defendant-appellant.

John Ashcroft, Michael H. Finkelstein, Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

A jury convicted appellant of murder in the second degree, § 565.004 RSMo.1978. He was sentenced to imprisonment for ten

years in the custody of the Department of Corrections. The judgment is affirmed.

Appellant charges the trial court erred in: (1) overruling appellant's motion to suppress his oral and written statements; (2) giving Instruction No. 11, the second degree murder verdict director, because it allowed the jury to convict appellant based on his co-participant's intent; and (3) in denying appellant's motion for a new trial after refusing to investigate further the identity of one of the witnesses who said she was Gloria Pollard but who appellant said committed perjury because she was in fact Gloria's sister, Annie Pollard.

Charles Downey, known by the appellant and Alfred Saddler as the rent man, owned real estate at 2330 Dodier Street in St. Louis. He was working in the backyard at that address in the early afternoon of July 14, 1982 when he was shot between the eyes with a .22 caliber handgun. He remained conscious for a time, but expired the next morning in the hospital.

Two witnesses spoke to him at the scene of the shooting. One testified that Mr. Downey said, "Kid jumped over the fence and they told me to get them all this stuff." The other witness, a paramedic testified as follows:

He said he was up on the ladder and a young boy pulled a gun on him. Told him he was going to rob him. He said he told the boy, 'Oh, you got to be kidding.' And the boy shot at him. Said, 'He didn't shoot me. He just shot at me. I got nervous and fell off the ladder.'

The pistol used in the murder was in the possession of Alfred Saddler, nicknamed "Frog," on the day of the crime. Saddler said that it had been given or lent to him by a friend.

The testimony of the appellant and Saddler was in conflict but the jury could have believed that the two of them planned and participated in the robbery and murder. The appellant has not challenged the sufficiency of the evidence.

On July 16, 1982, the day after the shooting, two detectives took appellant, a juvenile of fifteen years, to the juvenile court where a juvenile officer advised him of his rights. Appellant voluntarily disclaimed any involvement in the crime. The two detectives who had brought him to the juvenile court remarked that they did not believe him.

The deputy juvenile officer allowed him to deny the crime, but then interrupted and told him his parents would have to be present for any statement. The deputy juvenile officer locked appellant in a cell pending the arrival of his mother, Mrs. Sarah Jones. Upon her arrival, she saw her son in an interrogation room.

The two detectives then questioned appellant, in his mother's presence, for about an hour. At first appellant denied participating in the crime, but he made inconsistent statements and finally admitted his involvement. He ultimately gave a statement which was written down by the deputy juvenile officer. Appellant, with help from the deputy juvenile officer, read the written statement and then both he and his mother signed it.

Other facts will be related as necessary in the discussion of appellant's points relied on.

Appellant charges the trial court erred by denying his motion to suppress his oral and written statements, asserting that there was a violation of his constitutional and statutory rights as a juvenile. The point is denied.

■ The state must prove that a juvenile's confession was given voluntarily for it to be admitted at trial. *In Interest of M___ C___,* 504 S.W.2d 641 (Mo.App. 1974). Whether a confession is voluntary is to be judged by the totality of circumstances. *In Interest of A.D.R.,* 603 S.W.2d 575, 584 (Mo. banc 1980). *M___ C___* and *A.D.R.* apply to the case at bar. Procedures which would yield a constitutional confession from adults may not if the suspect is a juvenile. *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948).

■ Because minors may not be able to assess their rights adequately, they must

be allowed to confer with a friendly adult. *Gallegos v. Colorado*, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962). Section 211.-131.2 RSMo.1978. Missouri courts have also acknowledged the importance of allowing a juvenile to talk with a friendly adult. *State v. Sinderson*, 455 S.W.2d 486 (Mo. 1970). The court cited *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), for the proposition that the presence and competence of the juvenile's parents bear on the admissibility of the confession.

Appellant complains that he was subjected to custodial interrogation and led to waive his rights and commit himself to making a statement before any effort was made to contact his mother. The record belies this claim.

The deputy juvenile officer talked to appellant and read him his rights. The appellant repeatedly said that he was not involved in the crime. The officer had taken appellant's name, address and telephone number, his parents' names and other information.

After appellant had denied his involvement, the deputy juvenile officer instructed the detectives to get appellant's mother who arrived about an hour later. When the mother came, the deputy juvenile officer explained why he requested that she come to juvenile court, and introduced her to the detectives. The deputy juvenile officer recalled that he had allowed appellant's mother to talk to appellant privately, but the officer was not one hundred percent certain.

The deputy juvenile officer then read appellant's rights from a form to both appellant and his mother, and explained the particular sentences of the rights in very simple terms. Both appellant and his mother indicated that they understood the rights and both signed the form. The authorities sufficiently complied with § 211.-131.2.

There is no merit to the claim that the deputy juvenile officer participated in the police interrogation of appellant. He only tried to calm appellant down when appellant became emotional. The juvenile officer also wrote down appellant's final statement as he made it. Appellant read the statement with help from the deputy juvenile officer and then signed it on each page. His mother also signed the statement as a witness.

There was no error in denying the motion to suppress his statement. It was given voluntarily and in accordance with constitutional and statutory provisions.

Appellant cites *State v. Wright*, 515 S.W.2d 421, 423 (Mo. banc 1974), but it does not support appellant's motion to suppress. He also cites *State v. Tolliver*, 561 S.W.2d 407, 409 (Mo.App.1977), arguing that the "academic explanation" of rights was insufficient. First, this part of *Tolliver* is dicta since the case was decided on other grounds. Second, the minor defendant in *Tolliver* did not have a parent or adult friend present to help him understand his rights.

The last case appellant mentions is *State v. McMillian*, 514 S.W.2d 528 (Mo. banc 1974). In *McMillian*, the Supreme Court declined to require that juveniles be told when their specific cases can be moved into adult court. *Id.* at 530–31[2]. The court did, however, write:

> ... we merely recognize it as one method, and probably the safest, of assuring that the juvenile realizes that criminal responsibility may result from his statement.

The supreme court found that the authorities gave McMillian no warning of possible adult charges. In the case at bar appellant argues that he received inadequate notice.

Appellant places much emphasis on the fact that neither he nor his mother read very well, but the trial court could consider that the deputy juvenile officer read appellant's rights from the form and explained each one to him. Included in the rights read to him was the caution that, if the offense charged would have been a felony if committed by an adult, appellant could be certified for trial as an adult. This was sufficient notice of the possibility of an adult prosecution.

Under the totality of circumstances here, appellant's statement was voluntary. *State v. Wright, supra.*

In appellant's second point, he asserts the trial court erred by giving Instruction No. 11, the verdict director on murder in the second degree, because it allowed the jury to convict appellant if "the defendant or Alfred Saddler intended to take the life or cause serious bodily harm to" the victim. Appellant reasons that if only Saddler intended to take the life of the victim, the jury should not have been able to find appellant guilty. The point is denied.

The state submitted, and the trial court gave, Instruction No. 11 which was patterned on MAI–CR 15.14 modified by MAI–CR 2.12. In addition to directing the jury that they might find the appellant guilty if either he or Saddler intended to take the life of Mr. Downey, the instruction also required that the jury find:

That with the purpose of promoting or furthering the commission of murder second degree, the defendant acted together with or aided or encouraged Alfred Saddler in committing that offense.

Instruction 11 did not deviate impermissibly from MAI. The trial court properly modified MAI–CR 15.14 with MAI–CR 2.12, the aiding and abetting instruction. *State v. Kennedy,* 596 S.W.2d 766, 770[8–11] (Mo. App.1980).

Appellant argues that Instruction 11 deviates from MAI because it allowed the jury to find that defendant or Saddler, instead of just defendant, intended to take the life of the victim. The sample instruction as given in MAI–CR 15.14 names only the defendant.

Appellant argues that this is a deviation and is presumptively prejudicial error. Appellant, however, is ignoring the modification of MAI–CR 15.14 by MAI–CR 2.12. The law is that if appellant by aiding and abetting promoted the commission of the crime by someone else, then the other person's intent becomes that of the appellant. *State v. Kennedy, supra* at 769.

There was evidence that both appellant and Saddler participated in the crime, but it was not clear who fired the fatal shot. In such cases the elements of the crime should be ascribed to the defendant or his co-participant. MAI–CR 2.12, Note on Use 6(b).

Appellant's third and final point asserts error on the part of the trial court in the denial of appellant's motion for a new trial. Appellant argues that the trial court should have inquired further into the allegation that a witness who testified she was Gloria Pollard was not in fact Gloria Pollard, but was Annie Pollard, a sister. This point too is denied.

Appellant's theory is that Annie Pollard committed perjury by testifying that she was Gloria Pollard.

When Gloria Pollard was on the stand, defense counsel inquired into her identity. Counsel also asked about Annie Pollard, and the witness testified that Annie was her sister and that she was at home. Counsel then inquired further about the Pollard family.

Appellant requested the court to review the question of witness Gloria or Annie Pollard's alleged perjury in his motion for a new trial. A hearing was held. The sole witness was the sister of the appellant who testified that when the bailiff stepped out of the courtroom to call Gloria Pollard, she, appellant's sister, saw Annie Pollard respond to the call.

There was a conflict in the testimony. It was for the trial court to make a finding of credibility. *State v. Nimrod,* 484 S.W.2d 475 (Mo.1972). The trial judge chose to believe Gloria Pollard, who testified that her sister was at home, instead of believing the defendant's sister.

The trial court has broad discretion in ruling on a motion for a new trial. Trial courts do not favor the granting of new trials on the ground presented here. *State v. Green,* 305 S.W.2d 863, 873 (Mo.1957). Movant in the case under review obviously did not satisfy the trial court that perjury

had indeed been committed. *State v. Harris*, 428 S.W.2d 497, 500 (Mo.1968).

In addition, Gloria Pollard's testimony was not crucial. Jones was convicted by his own statement and the testimony of Saddler. Gloria testified that the victim told her after he was shot that some kids jumped over a fence and demanded property from him. He didn't tell her who the "kids" were. Gloria then called the police.

Gloria also testified that sometime after the murder Saddler's watch was found in the garden where the crime took place and that she had seen Saddler with a gun before, but had never seen defendant with a gun.

In rebuttal she testified about an innocuous conversation with appellant after the murder.

■ The cases cited by appellant stand for the legal propositions he asserts, but they do not help him. The trial court called a hearing to inquire about the possibility of perjury and was satisfied, after hearing appellant's sister's testimony, that there was not sufficient reason to grant a new trial. There was no abuse of discretion. Appellant's final point is denied.

The judgment is affirmed.

The foregoing opinion was first handed down on February 26, 1985. The cause was then ordered transferred by the Supreme Court upon the application of the appellant. The Supreme Court subsequently retransferred it to this court for consideration of the effect, if any, of Supreme Court Rule 122.05 upon the decision. Rule 122.05 reads:

Notification of Rights

Prior to in-custody interrogation, the juvenile shall be advised by the juvenile officer that he has the right to remain silent, that he has the right to an attorney and if he is unable to afford an attorney that one will be provided for him, that whatever he says to the juvenile officer or juvenile court personnel cannot be used in any proceedings except in juvenile court, that if he does talk he has the right to stop talking at any time

and that whatever he says to the police or others than the juvenile officer or juvenile court personnel may be used against him in the event he is prosecuted as an adult. (Adopted May 28, 1981, effective Jan. 1, 1982).

This court has reviewed the transcript and state's Exhibit 5A. Exhibit 5A consists of a statement of constitutional rights signed by the appellant and his mother, a waiver of attorney and a statement, signed by appellant and witnessed by his mother.

Rule 122.05 was not called to the attention of this court when the cause was originally submitted, but upon thorough examination of the relevant portions of the transcript and Exhibit 5A, this court finds no reason for suppressing appellant's statement.

■ The only possible requirement of the rule which was not followed is the portion requiring that the juvenile be advised that whatever he says to the juvenile officer or juvenile court personnel cannot be used in any proceedings, except in juvenile court. Exhibit 5A does not specifically show by its printed terms that appellant was given this information. This omission was arguably error, but it was not prejudicial. Whatever appellant said to the juvenile officer was not material to his conviction. It had nothing to do with the voluntariness of appellant's statement, made after his rights were explained in detail to him and his mother, both of whom said they understood his rights and then signed the rights document.

Appellant in his suggestions in support of his motion to transfer to the Supreme Court relies mostly upon a reargument of the facts surrounding appellant's apprehension and interrogation and the limited education of appellant and his mother, arguments considered and rejected in our earlier opinion.

He mentions *State v. Kemper*, 535 S.W.2d 241 (Mo.App.1975) as having been ignored in the original opinion. That case is distinguishable. In *Kemper* the juvenile officer participated actively in the interro-

gation, opening the interrogation with questions designed to provide answers linking the appellant there with the offenses, and, according to the juvenile officer's testimony he "principally" asked the questions and said further, "I don't think any of us ever ceased asking questions," "us" being two police officers and the juvenile officer. *Kemper*, at page 254[17].

In *Kemper*, also, it was not made clear to the appellant that criminal responsibility might result from any statement he made. There was no testimony of any direct warning to that effect.

There is no reason to change the opinion as originally issued.

SMITH, P.J., and SATZ, J., concur.