STATE of Missouri, Respondent,

v.

Shawn Dale BARNABY, Appellant.

Nos. WD 50806, WD 53054.

Missouri Court of Appeals,
Western District.

July 22, 1997.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

HANNA, Judge.

The defendant, Shawn D. Barnaby, accompanied by three other individuals, went to Blue Valley Park in Jackson County to "[m]ak[e] some money" by robbing homosexuals. The jury found him guilty of murder in the first degree (§ 565.020, RSMo 1994), armed criminal action (§ 571.015.1, RSMo 1994), robbery in the first degree (§ 569.020, RSMo 1994), and kidnapping (§ 565.110, RSMo 1994). He was sentenced to consecutive sentences of life imprisonment without the possibility of probation or parole and 10, 20, and 10 years imprisonment, respectively.

The defendant, at the time of the crime, was a 16 year old juvenile who contends that the trial court should have suppressed his admissions to the police and that his trial counsel was ineffective because he "failed to call him to the witness stand" to testify.

The sufficiency of the evidence is not challenged. When the defendant and three other individuals, Marvin Goff, Robert Ladd, and Joseph Honea, left for Blue Valley Park, they carried with them Honea's "fairly large knife" and a BB gun. They remained in hiding until William Childs arrived at the park. They yelled at him to get out of his car and then began to punch him in the face and kick him as he lay on the ground. When he got up, the defendant and Ladd took him into the woods where they repeatedly struck and stabbed him about the face, head, neck, back, and hands with the knife. They hit him in the head at least twice with a 42 pound rock. Death was determined to be blunt head trauma resulting in a basilar skull fracture and brain contusion with multiple stab wounds.

Kansas City Detective Pete Smith first interviewed Mr. Barnaby as a witness in the case. At this time, Mr. Barnaby was within five months of his 17th birthday. He initially told the police that Robert Ladd and Joseph Honea had confessed to him that they had committed the robbery and murder of Mr. Childs. He denied any involvement and told the officer that he had not been present. In a subsequent interview with Detective Chris Jefferson, he was given his *Miranda* [1] warn-

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ing and, because of his juvenile status, those warnings required by § 211.059, RSMo 1994, all of which he waived. He then admitted that he and the three other individuals attacked and robbed Mr. Childs and that he and Ladd took Mr. Childs into the woods where they killed him. His confession was videotaped. The confession was made in the presence of his mother and Jackson County deputy juvenile officer Brenton Sovich. His mother was an unwilling participant in the process, which is the basis of his first point on appeal. The trial court denied the defendant's motion to suppress the videotaped confession, and the case proceeded to trial, resulting in the guilty verdicts as indicated.

In the defendant's first point on appeal, he claims that his statement was taken in violation of his privilege against self-incrimination because it was involuntary under the totality of the circumstances, given his youth, the inherently coercive environment, and the fact that his mother was not a "friendly adult," citing *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962). Essentially, the defendant contends that his mother was not "friendly," even though she was present, because she did nothing to protect his rights. He maintains that the mother's presence was a mere formality to comply with the statute. This, he argues, renders his confession involuntary.

 A defendant is denied due process if his conviction is founded, in whole or in part, upon an involuntary confession. *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964). Once the pre-trial statement is challenged, the state has the burden of proving by a preponderance of the evidence that the statement was voluntarily given. *State v. Anderson,* 862 S.W.2d 425, 430 (Mo.App.1993). Conflicts in the evidence were for the trial court to resolve, and we defer to the trial court's superior position from which to determine credibility. *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986). Therefore, the question is whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntary. *Anderson,* 862 S.W.2d at 430.

 Whether a confession by a juvenile is voluntary is to be judged by the totality of the circumstances. *State v. Jones,* 699 S.W.2d 525, 527 (Mo.App.1985). Section 211.059.1(3), RSMo 1994, provides that a juvenile questioned by the authorities has the right to have "a parent, guardian or custodian present during questioning...." The statute and the Missouri courts have recognized that because juveniles may not be able to assess their rights adequately, they must be allowed to confer with a friendly adult. *Jones,* 699 S.W.2d at 527–28; *State v. Sinderson,* 455 S.W.2d 486, 493–95 (Mo.1970). The rationale is that an adult's presence helps to insure that the juvenile understands the consequences of his confession and his rights. *Jones,* 699 S.W.2d at 527–28. However, the totality approach "mandates inquiry into all the circumstances surrounding the interrogation." *In Interest of A.D.R.,* 603 S.W.2d 575, 584 (Mo. banc 1980). No single factor is dispositive, although the fact that the defendant received, and voluntarily waived, his *Miranda* rights is an important consideration. *Lytle,* 715 S.W.2d at 915. While parental protection is of great importance in affecting the totality of all the circumstances involved, *State v. Tolliver,* 561 S.W.2d 407, 410 (Mo.App.1977), our courts have not held that a parent's absence makes a resulting statement illegal per se. *Id.* However, in light of the mother's limited role, a careful review of the totality of the circumstances is required here in order to determine whether the statement was voluntary.

A hearing on the defendant's motion to suppress his videotaped statement was held on the morning of trial. Detectives Smith and Jefferson and deputy juvenile officer Sovich testified. The defendant did not testify. When the police officers received information of the defendant's involvement, they went to his house and arrested him. He indicated a willingness to talk to them at that time. However, they instructed him against discussing the matter until they were able to locate his mother and a juvenile officer. At the defendant's request, the police went to the mother's location and requested her presence. She accompanied them to police headquarters.

Before the videotaped statement was commenced, the *Miranda* warning was given. Also, in his mother's presence, deputy juvenile officer Sovich advised Mr. Barnaby of those rights which are recommended in *State v. McMillian*, 514 S.W.2d 528 (Mo. banc 1974).[2] Mr. Sovich's warning repeated the rights given in the *Miranda* warning and, additionally, he warned that the juvenile could be transferred to adult court and tried as an adult on the charges. *Id.* at 530–31. He also advised that any statement that Mr. Barnaby may make could be used against him in adult court.[3] Mr. Barnaby acknowledged his right to have a lawyer present, to remain silent and not make a statement, to end the questioning at any time, that no promises, threats, or rewards had been made, and that any statement could be used against him in adult court. Mr. Barnaby waived his rights. Following the warning and the juvenile's waiver, the juvenile officer asked him if he had any questions. He answered that he did not and agreed to give his statement. Furthermore, at the commencement and conclusion of the videotaped statement, Detective Jefferson confirmed with the mother and the juvenile officer that the warnings per *Miranda* and in accordance with *McMillian* had been given to Mr. Barnaby in the presence of the mother before the videotaping began.

▪ In this case, the defendant was advised of and waived both his *Miranda* rights and his rights as a juvenile in the presence of his mother and the juvenile officer. The warnings that were read to him cautioned that he could be charged and tried in adult court and that his statement could be used against him. Mr. Barnaby stated that he understood his rights and acknowledged this fact by signing the *Miranda* waiver. The police officer did nothing to exclude Ms. Barnaby from the proceeding and indeed, encouraged her to participate. The officers made certain that she understood that the warnings had been given and asked her if she did in fact understand. The mother gave a half-hearted acknowledgement of her understanding of those rights.

While the videotaped confession indicated that the mother was not a willing participant, it answers, in part, whether the defendant was deprived of a free choice to admit, deny, or refuse to answer questions and whether there was physical or psychological coercion to such a degree that the defendant's will was overborne at the time he made the statement. The record reflects that the interrogating officers did not badger, accuse, or take advantage of the defendant. They asked the defendant to tell them what happened. The mother was there at her son's request. Nothing in the record indicates that Mr. Barnaby was precluded by the authorities from conferring with his mother.

We have reviewed the record on appeal, which includes the challenged videotaped statement and the facts mentioned above. We hold that there is sufficient evidence to sustain the trial court's finding that the statement was voluntarily given. *Lytle*, 715 S.W.2d at 915. The videotape alone is persuasive evidence that the defendant knowingly and voluntarily waived his juvenile and *Miranda* rights. The trial court had the opportunity to view the statement and to pass on the credibility of all of the witnesses. The court also had evidence that the juvenile received sufficient notice of the possibility of adult prosecution. *Jones*, 699 S.W.2d at 528. The record demonstrates that the trial court did not err in holding that the state sustained its burden of showing that the statement was taken voluntarily under the totality of the circumstances standard. Point denied.

▪ The defendant next claims that his counsel was constitutionally ineffective "for not allowing [him] to testify" and alleges prejudice because "in such cases jurors would like to hear what the accused has to say on his own behalf about the incident." The motion court held that the allegation was

---

2. In State v. McMillian, the court recognized "one method, and probably the safest, of assuring that the juvenile realizes that criminal responsibility may result from his statement" was to specifically advise the juvenile of the potential adult prosecution and the use of his statement in

that proceeding. *McMillian*, 514 S.W.2d at 530–31.

3. The juvenile officer did not participate in the interrogation.

insufficient to require an evidentiary hearing because there were no "specific facts to support his assertion." Rule 29.15(k), V.A.M.R., requires that this conclusion must be "clearly erroneous" in order for the appellate court to reverse. *See State v. Johnson*, 901 S.W.2d 60, 62 (Mo. banc 1995). The appellate court must be left with the definite and firm impression that a mistake has been made from a review of the entire record. *Id.*

■ We held in *State v. Bolds*, 913 S.W.2d 393 (Mo.App.1996), that "[a] defendant has no constitutional entitlement to a postconviction relief evidentiary hearing to determine whether his right to testify was infringed upon by his counsel when he merely asserts that counsel prevented him from testifying." *Id.* at 396. At a minimum, the defendant must provide specific facts to support his assertion. *Id.* at 396–97. Importantly, the defendant here fails to state what his testimony would have been if he had been called to testify. *Kelly v. State*, 796 S.W.2d 657, 659 (Mo.App.1990). Considering the two videotaped statements that he gave to the police, the first of which denied any involvement and the second his admission, the defendant was placed in a difficult position as to what his jury trial testimony may have been and how it may have altered the outcome of the trial. Because the defendant failed to set forth the content of the testimony and how it would have been outcome-determinative, the motion court was not clearly erroneous in refusing to grant a hearing. Point denied.

The judgments of convictions and denial of post-conviction relief are affirmed.

LAURA DENVIR STITH, P.J., and BRECKENRIDGE, J., concur.