**STATE of Missouri, Plaintiff–Respondent,**

v.

**Joseph S. BURRIS, Defendant–Appellant.**

No. 22075.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 4, 2000.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 26, 2000.

Craig A. Johnston, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Presiding Judge.

Joseph S. Burris (defendant) was convicted of murder in the first degree, § 565.020.1, and armed criminal action, § 571.015.1.[1] He was sentenced to life imprisonment without possibility of probation or parole for the offense of murder in the first degree and imprisonment for a term of 50 years for the offense of armed criminal action. This court affirms.

Defendant had been placed in the Mountain Park Baptist Church and Boarding Academy (the academy) in Wayne County, Missouri, in October 1995. He was residing there in March 1996. He was 15 years old.

Trent Matthews was a teacher/supervisor at the academy. On March 25, 1996, he was working in the school office. He

---

1. References to statutes are to RSMo 1994.

noticed defendant and two other students, Anthony Rutherford and Jonathan Moore, sitting in a learning center adjacent to the office. Anthony Rutherford asked to speak to the academy's assistant pastor and principal, Sam Gerhardt. Mr. Gerhardt was not available. Mr. Matthews asked what the problem was. Defendant told him he would "read about it in the morning paper." Defendant handed Mr. Matthews a leather sheath that contained a knife. There appeared to be bloodstains on it. Mr. Matthews asked if he had hurt someone with the knife. Defendant answered, "[Y]es."

Mr. Matthews interrupted the principal, Mr. Gerhardt. Mr. Gerhardt went to the boys and asked what had happened. Defendant answered that they had "killed him." Mr. Gerhardt testified:

Q. [by the prosecuting attorney] Did you know what—did you know what [defendant] meant at that time?

A. No, sir. And then I said, who? What do you mean? And they said, Will, we killed him.

Q. And by Will, you understood that to mean who?

A. Will Futrelle.

Q. He was also a resident, but of shorter duration than [defendant]?

A. Yes, sir.

The boys took Mr. Gerhardt and Mr. Matthews to Will Futrelle's body. Mr. Matthews was asked the following questions and gave the following answers about the area where they observed the body:

Q. ... Before you got to the body, did you observe anything else unusual about the area?

A. Well, as I came down the trail, there's a fork there in the trail, there was a glove laying, and there was some blood stains [sic]. And, I guess, kind of marks as if the body had been drug from the trail.

Q. Did that drag trail end anywhere?

A. Yes. It ended off to the left of the trail there in the woods, probably about 15, 20 feet.

Q. And what was at the end of the drag trail?

A. Will's body.

Mr. Matthews, Mr. Gerhardt and the three boys returned to the school office. The county sheriff, Nathan Hale, was called. The sheriff arrived shortly after the call was placed. He took defendant and the other two boys into custody.

A deputy juvenile officer, James Bearden, arrived. Anthony Rutherford was 18 years old. The other two were juveniles. They were separated from Rutherford. The three were later taken to the Wayne County Sheriff's office. After arriving there, Mr. Bearden contacted defendant's mother in California. Mr. Bearden told her that a young man had been killed at the academy; that her son and two others were present at the time he was killed. Mr. Bearden testified at a hearing on a motion to suppress evidence filed by defendant. He told the trial judge:

I told [defendant's mother] that this was a very serious matter and that [defendant] could go into the juvenile court, have a hearing there and that a certification process could be filed against him—and would be filed because it was mandatory by law—and that he would end up—could end up in the adult court.

Mr. Bearden testified that defendant's mother was made aware that anything defendant told law enforcement officials could be used against him later in a trial. He said defendant's mother thought defendant should be questioned. After talking to Mr. Bearden, defendant's mother talked to defendant.

Later, defendant was advised of his *Miranda* rights by Sheriff Hale and said he wanted to make a statement. Defendant told Sheriff Hale he killed Will Futrelle so Futrelle would not interfere with his and two other students' plans to break into a girls dormitory. Defendant said he took a

knife from Anthony Rutherford and used it to cut Will Futrelle's throat. Defendant said Will Futrelle fell to the ground but did not die immediately; that defendant bent over the victim and cut his throat again, "two or three more times." Sheriff Hale took a written statement and a video-taped oral statement.

Defendant filed a motion "to suppress all evidence of statements made by the Defendant, and any evidence derived as a result thereof, . . . ." The motion was denied following an evidentiary hearing. Defendant's trial attorney objected to evidence concerning defendant's statements at trial. The objection was overruled.

Four of defendant's five points on appeal are directed to the denial of defendant's motion to suppress evidence and the admission of his statements in evidence. The fifth point is directed to the admission of a photograph.

### Defendant's Statements

█ The first two points on appeal relate to the voluntariness of defendant's statements. Point I is directed to the content of the warning given defendant about his rights as an accused and the totality of circumstances surrounding the giving of the statements. Point II relates to § 211.059.

██ Point I asserts the trial court erred in denying defendant's motion to suppress evidence and admitting his statements in evidence because defendant was 15 years old, was not provided an "adult friend" during his interrogation, was not advised that his statements could be used against him in an adult prosecution and a juvenile officer participated in the investigation and questioning.

After an individual has been advised of his *Miranda* [2] rights, no statement he makes may be used against him unless he makes a knowing, intelligent, understanding and voluntary waiver of those rights. "The test for 'voluntari-

2.  *See Miranda v. Arizona,* 384 U.S. 436, 475–

ness' is whether under the totality of the circumstances defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed." *State v. Lytle,* 715 S.W.2d 910 (Mo. banc 1986).

*State v. Pierce,* 749 S.W.2d 397, 401–02 (Mo. banc 1988).

█ The fact that defendant was 15 years old does not, standing alone, disqualify him from waiving his right to remain silent. *Id.* at 402. Adolescents may voluntarily waive their rights. *Id.* Whether a juvenile's confession is voluntary is determined by the facts and circumstances of the particular case. *Id.* Minority is a factor for consideration. *Id.*

Defendant was advised of his *Miranda* rights before he gave his statements to Sheriff Hale. Sheriff Hale read a form he obtained from Mr. Bearden, the deputy juvenile officer who was called to the academy. The form is entitled "JUVENILE RIGHTS WARNING." It states:

Before any questions are asked, you must understand your rights:

1. You have the right to remain silent.

2. Anything you say can and will be used against you in a court of law.

3. You have the right to talk to a lawyer and have him present with you while you are being questioned.

4. If you are unable to afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.

5. You can decide at any time to exercise these rights and not answer any questions or make any statements.

76, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**588**

*CERTIFICATION WARNING*—(Strike Those Not Applicable)

6. a) A juvenile of *any* age alleged to have committed first or second degree murder, first degree assault, forcible rape, forcible sodomy, first degree robbery or distribution of drugs may be certified by the court to be tried as an adult. (Certification hearing is required.)

b) A juvenile of *any* age who has previously been adjudicated for two or more unrelated felonies and is now alleged to have committed a felony offense, may be certified by the court to be tried as an adult. (Certification hearing is required)

c) A juvenile, twelve (12) years of age or older, alleged to have committed a felony offense, may be certified by the court to be tried as an adult. (Certification hearing is discretionary.)

The "certification warning" on the form is followed, on the same page, by a paragraph entitled "WAIVER." It states:

I have read the above statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Do you understand your rights as set out above? _____

Having these rights in mind, do you wish to talk to us now? _____

There are places for signatures below the "waiver" portion of the form. Lines for signatures are provided for the juvenile, the investigating officer and parents. Lines are provided for writing the date and time. There are lines to the left of each numbered paragraph for initials. The form was signed by defendant as "Juvenile"; by Nathan Hale as "Investigating Officer"; and by Sam L. Gerhardt as "Custodian." (Mr. Gerhardt's signature appears on a line for a parent's signature. "Parent" is lined out and the word "Custodian" is handwritten beneath the line.) Defendant's signature is also written perpendicularly across the text of the form.

The initials "JB" are on each line by the paragraph numbers. Subparagraphs a) and c) under paragraph 6, the "Certification Warning," are circled. The word "Yes" followed by the initials "JB" are handwritten following the questions, "Do you understand your rights as set out above?" and, "Having these rights in mind, do you wish to talk to us now?"

A two-page handwritten statement on lined paper is attached to the form. Defendant's signature is written across the face of each page of the statement, perpendicular to the text of the statement. His signature is also written at the bottom of the second page of the statement. The signatures of James W. Bearden, "Wayne County CDJO," Nathan Hale, "Sheriff," L.W. Plunkett, Sr., and Sam L. Gerhardt appear at the bottom of the second page of the statement below defendant's signature.

Defendant was 15 years old when he was placed in the custody of the deputy juvenile officer and when he gave the statements in question. He was described as "a quiet fellow, but hard working in school, good student, good personality." His *Miranda* rights were read to him before he gave any statement. It was read again before defendant gave the statement that was videotaped. Sheriff Hale, Sam Gerhardt and James Bearden were present when the statements were given. They testified defendant appeared to understand his rights.

Defendant's assertion that he was not advised his statements could be used against him in an adult prosecution is refuted by the written rights form that was read to him, given to him, and signed by him. Paragraph 2 of the form told him anything he said could be used against him in a court of law. Defendant's initials were placed alongside that paragraph.

Defendant's initials were also placed to the side of paragraph 6. Two of its subparagraphs are circled, subparagraphs a) and c). Subparagraph a) explains that a juvenile of any age alleged to have committed certain offenses, including first or second degree murder and first degree assault, may be certified by the court to be tried as an adult. Subparagraph c) explains that a juvenile who is twelve years of age or older and who is alleged to have committed any felony offense may be certified by the court to be tried as an adult.

Section 211.059 provides that a child taken into custody for criminal conduct is to be advised of certain rights prior to questioning. Section 211.059.1 states that the child shall be advised:

(1) That he has the right to remain silent; and

(2) That any statement he does make to anyone can be and may be used against him; and

(3) That he has a right to have a parent, guardian or custodian present during questioning; and

(4) That he has a right to consult with an attorney and that one will be appointed and paid for him if he cannot afford one.

Both Point I and Point II allude to the right to have a parent, guardian or custodian present. Circumstances that Point I asserts precluded defendant's statements from being voluntary include that "he was not provided an 'adult friend' during his lengthy interrogation" and that defendant's "supposed 'adult friend', 'Brother Sam [Gerhardt]' did not feel as though it was his place to advise [defendant] one way or the other on speaking to the authorities." Point II asserts defendant's statements were not voluntary because "he was not advised prior to questioning that he had the right to have a parent, guardian or custodian present during questioning as required by § 211.059; and, although the principal of the school that [defendant] attended was present during the interroga-

tion, that person did not qualify as an 'adult friend,' because of a conflict of interest since the principal helped run the school where the victim was killed and also had custodial duties over the victim"; that "instead of advising [defendant], the principal told [defendant] that it was not his place to advise [defendant] on whether [defendant] should speak to the authorities without first speaking to an attorney."

The right of a child to be advised that he or she has a right to have a parent, guardian or custodian present during questioning is derived from § 211.059.1(3), a statutory provision that is part of this state's juvenile code, rather than from the *Miranda* interpretation of a suspect's constitutional rights. Section 211.059.1(3) provides that the child is to be advised that he or she has the "right to have a parent, guardian or custodian present during questioning." It is not a right to have an "adult friend" available to advise a child concerning the exercise of his or her rights. It is a right "to confer with a friendly adult" (i.e., one whose mindset is not antagonistic or adverse to the child) "because juveniles may not be able to assess their rights adequately." *State v. Barnaby,* 950 S.W.2d 1, 3 (Mo.App.1997). "The rationale is that an adult's presence helps to insure that the juvenile understands the consequences of his confession and his rights." *Id.*

Defendant conferred with his mother by telephone before making any statement. His mother was aware of the nature of the charges defendant faced; she had been advised of the circumstances by the deputy juvenile officer. The principal of defendant's school, Sam Gerhardt, was present with defendant when he was interviewed by law enforcement officers. Defendant had been voluntarily placed with the academy. He was under its physical custody. As such, the administrators who exercised control over defendant occupied

the position of "custodian." [3] As principal, Sam Gerhardt was defendant's custodian.

The record on appeal does not disclose that defendant was advised prior to questioning that he had the right to have a parent, guardian or custodian present during questioning. However, defendant was afforded that right. Defendant's custodian was present during questioning. Defendant consulted with his custodian before being questioned. Defendant was not prejudiced by not being advised he had a right he was otherwise provided.

The remaining complaint included in Point I is that the deputy juvenile officer participated in the investigation and questioning that produced the statements defendant asserts should have been suppressed. The record does not corroborate defendant's claim that the deputy juvenile officer participated in defendant's interrogation. The deputy juvenile officer's involvement in the investigation was not inconsistent with any duty owed defendant. He monitored the investigation and interrogation undertaken by the sheriff and highway patrol personnel without directly participating in it.

The record on appeal, including the videotaped statement that was admitted in evidence and which has been filed with this court, does not support the claim that the deputy juvenile officer participated in defendant's interrogation. The deputy juvenile officer was present when statements were obtained from defendant and provided the sheriff with a form used in advising defendant of his *Miranda* rights. The presence of a juvenile officer when law enforcement officers obtain statements from a juvenile does not render a confession by the juvenile inadmissible. *State v. Perry*, 954 S.W.2d 554, 563–64 (Mo.App.1997), *cert. denied*, 524 U.S. 905, 118 S.Ct. 2062, 141 L.Ed.2d 139 (1998).

Defendant was 15 years old when he was questioned. Defendant's videotaped statement reveals him physically mature. His demeanor was that of an emotionally mature person. He had been permitted to speak privately, by telephone, with his mother before he was interviewed. The principal of his boarding school, his custodian, was present before and during interrogation by law enforcement officers. The trial court's finding that defendant's statements were voluntary, under the totality of the evidence, was not an abuse of discretion. Point I is denied.

Point II is an allegation that the trial court committed plain error in denying defendant's motion to suppress statements and in admitting his statements in evidence because he was not advised prior to questioning , of his right under § 211.059.1(3) to have a parent, guardian or custodian present.[4] For the reasons heretofore given, no manifest injustice or miscarriage of justice occurred. Point II is denied.

Point III asserts the trial court committed plain error in denying the motion to suppress evidence, the motion for new trial, and in admitting defendant's statements in evidence because the juvenile officer who was called when the crime was discovered participated in the custodial investigation by law enforcement officers. Defendant asserts this was contrary to § 211.271; that it resulted in manifest injustice to him. Section 211.271.3 provides that after a child is taken into custody "all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel" are not to be used in any proceeding against the child other

---

3. Rule 110.05(5) of the Rules of Practice and Procedure in Juvenile Court provides, "[C]ustodian includes parent, guardian of the person, and any person having legal or actual custody of a juvenile."

4. Defendant concedes that the issue raised in Point II was not preserved for appellate review because it was not raised at trial or in his motion for new trial. *See State v. Guidorzi*, 895 S.W.2d 225, 228 (Mo.App.1995). He requests plain error review as permitted by Rule 30.20.

than proceedings under the juvenile code. Since defendant was tried under the general law, he contends the use of the statements in his prosecution constituted plain error.[5]

This claim was addressed in Point I. The record on appeal does not support defendant's claim that Mr. Bearden, the deputy juvenile officer, interrogated defendant. Point III is denied.

Point IV asserts the trial court erred in denying defendant's motion to suppress evidence, motion for new trial, and in admitting his statements in evidence because defendant was subjected to custodial interrogation without being advised of his rights by a juvenile officer or a designee trained by the juvenile officer as set forth in Rule 122.05. Rule 122.05 specifies that prior to in-custody interrogation, a juvenile is to be advised of his rights "by the juvenile officer or by a designee trained by the juvenile officer." The comment to Rule 122.05 explains the purpose of the rule "is to provide that a juvenile in custody shall be advised of certain rights and the scope of such advice." Defendant again recognizes he raised no claim that Rule 122.05 had been violated at trial or in his motion for new trial. He requests plain error review.

The record on appeal discloses that the deputy juvenile officer provided the sheriff with the form that was read to defendant by the sheriff and signed by the defendant. Arguably, furnishing the form with the language to be used in advising defendant of his rights was a means of providing the sheriff with the requisite training required by Rule 122.05 and sufficed to designate the sheriff as the one who would advise defendant of those rights. Regardless, this court concludes under the facts in this case, as disclosed by the record on appeal, that defendant was advised of his rights as an accused and as a juvenile and that he understood those rights. This court finds no miscarriage of justice or manifest injustice. Point IV is denied.

*The Photograph*

Point V asserts trial court error in admitting an autopsy photograph of the victim. It asserts the trial court abused its discretion in admitting the photograph, State's Exhibit No. 10, and in denying a request for mistrial "when a juror was visibly shaken and almost in tears after seeing the autopsy photo."

The trial court is afforded broad discretion in determining the admissibility of demonstrative evidence, such as a photograph, and the admission of such evidence is error only upon a showing of an abuse of discretion. *State v. Holtkamp*, 588 S.W.2d 183 (Mo.App.1979); *State v. Mattingly*, 573 S.W.2d 372 (Mo. App.1978); *State v. Love*, 546 S.W.2d 441, 452 (Mo.App.1976). A photograph, generally speaking, is superior to words as a means of description, *State v. Blair*, 531 S.W.2d 755 (Mo.App.1975), and it should not be rejected because by presenting an accurate portrayal it tends to be inflammatory. *State v. Swenson*, 551 S.W.2d 917 (Mo.App.1977); *State v. Clark*, 494 S.W.2d 26 (Mo. [banc] 1973). *State v. Burnfin*, 606 S.W.2d 629, 630 (Mo. 1980).

State's Exhibit No. 10 depicts the nature, location and degree of the injury inflicted on the victim. Insofar as the photograph may be shocking or gruesome, it is because the crime is of that sort. "[G]ruesome crimes produce gruesome, yet probative, photographs." *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Point V is denied. The judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.

---

5. As with respect to the issue in Point II, this claim was not perfected for appellate review and is, therefore, considered only for plain error as permitted by Rule 30.20.